# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTY OF ESSEX, NOVEMBER TERM 1871, AT SALEM.

---

##### PRESENT:

Hon. REUBEN A. CHAPMAN, CHIEF JUSTICE.
Hon. HORACE GRAY, JR.,
Hon. JAMES D. COLT,
Hon. SETH AMES, } JUSTICES.
Hon. MARCUS MORTON,

---

## COMMONWEALTH vs. BURTON G. ROBERTS & others.

Two or more defendants, indicted jointly for committing manslaughter with a knife, may be convicted upon proof that, though only one of them used the knife, the others were present aiding and abetting him in the use of it; or may be found guilty in different degrees on such an indictment, some of them of the manslaughter, and others only of an assault.

On the trial of an indictment for stabbing a man with a knife, evidence of an exclamation of another man, that the defendants had knives, during a fight which occurred between him and them *immediately after* the affray in which the man was stabbed, is inadmissible to prove that the defendants had a knife at the time of the stabbing.

Dying declarations are inadmissible in evidence as such, if at the time of making them the person had any expectation or hope of recovery; and their admission under a ruling that they were competent "if he believed that his end was near at hand, although he might think there was a slight chance of life," and upon a finding that such was the state of the facts, affords good ground of exception.

INDICTMENT for manslaughter, averring that Burton G. Rob erts, Isaac Roberts and John Reynolds, on August 27, 1870, at Haverhill, "in and upon one Bernard Carlton feloniously and wil-

fully did make an assault, and the said Burton, Isaac and John, with a certain knife, the said Carlton, in and upon the belly of him, the said Carlton, then and there feloniously and wilfully did strike, cut, stab and thrust, giving to the said Carlton then and there, with the knife aforesaid, in and upon the belly of him, the said Carlton, one mortal wound," of which wound he languished until September 12, 1870, when he died of it, at Haverhill.

At the trial in the superior court, before *Pitman,* J., the jury returned a general verdict of guilty against Burton G. Roberts, and found the other two defendants guilty of an assault, but not of the residue of the indictment ; and the judge allowed a bill of exceptions, of which the following is the material part :

" Before the jury were empanelled, the defendants moved to quash the indictment, because it did not set forth which of the parties struck the blow, or what acts each did to make them principals, or which of them had the knife, and because it did not distinctly allege the acts of the several parties ; and the court overruled the motion.

" At the trial, the Commonwealth offered no evidence that all the defendants struck Carlton, and the district attorney stated that there was no evidence to connect Reynolds with the homicide. The Commonwealth offered evidence that Reynolds first struck Carlton with his fist, at the commencement of the trouble ; but the district attorney did not contend that there was evidence that Reynolds used a knife, or encouraged or knew of the use of a knife by any other person. The defendant then asked the court to rule that there was a variance between the allegation and evidence ; and the court declined so to rule.

" The Commonwealth offered evidence tending to prove that on the night of August 27, 1870, the three defendants were together, and one or more of them made an assault on Carlton and others in his company ; that a fight between the parties ensued ; that during the affray Carlton was cut in the abdomen ; that, after Carlton was cut, two of the defendants made an attack on Cornelius Cooney, and knocked him down ; that both were upon him, and while so upon him one of them used a knife upon Cooney, and struck him with it ; and that Cooney said, during

the affray, ' Look out ; they have got knives.' The defendants were under indictment for the assault upon Cooney, and objected to the evidence ; but the court ruled that evidence of where the defendants were immediately after the assault on Carlton, and that one of them drew a knife immediately thereafter upon another person, and that in their presence charge was made, at the time, that they had a knife, was admissible, ' not for the purpose of showing an assault on Cooney, but for the limited purpose of showing the possession of a knife.'

" The Commonwealth offered evidence that Carlton, after he was cut, went into a stable close by, and physicians were sent for ; that two physicians, named respectively Johnson and Howe, attended him there ; that Carlton asked Johnson what his chances were, and Johnson told him that, if the intestines were cut, his chances would be slight, but that, if not cut, possibly he might get over it ; and that Johnson found the intestines cut, but that this fact was not communicated to Carlton until some days afterwards, when his symptoms indicated that he might get well. Howe testified that Carlton asked him what his chance of recovery was, and he told him very slight indeed ; that at the time he so told him he did not know that his intestines were cut ; that he told the father and brother of Carlton that he did not think Carlton would live twenty-four hours ; and that he did not know that Carlton heard the statement, but it was made in his presence.

" The Commonwealth then offered to put in the declarations of Carlton as dying declarations. The defendants contended that such declarations could not be admitted unless he was in immediate expectation of death ; and that, if he then had any hope of recovery, they would be inadmissible. The court ruled, as a matter of law, that, if Carlton believed that his end was near at hand, his declarations would be admissible, although he might think there was a slight chance of life. One of the doctors also testified on cross-examination that persons injured as Carlton was do not commonly recover, yet frequently they did. The court admitted the declarations ; first finding as a fact that Carlton did believe his end was near and that his chance of life was very slight.

" The doctor then testified that he asked Carlton how it happened; and that Carlton said he was in company with John Graham and Peter Frink, and going up the street they were met by three men; that one asked them to drink; that he declined; that one of the men used profane expressions, and the next he knew he was struck; and that he did not know these men, but should know them if he should see them. The doctor further testified that the next morning two of the defendants were brought into Carlton's room, and Carlton said that they were the men, and said that one of them was the man who struck him with the knife; that this was denied by the defendants; but that as they began to talk they were sent out of the room.

" The court at this stage excluded narrative statements, and only allowed it to be shown that Carlton identified the defendants; but the defendants' counsel, in cross-examination, having inquired as to the conversation which took place, the district attorney was then allowed to reëxamine upon the same subject.

" The doctor also testified that he asked Carlton, the next day or day after, if he was sure that one of the defendants was the man, and that Carlton said he was sure and was ready to swear to it. The defendants objected to the testimony, as it did not appear that at that time the declarations were made in expectation of impending death, the doctor having testified that nothing had been said to Carlton as to his condition, since the first conversation as to his condition, and that he had expressed no apprehension of immediate death. But the court ruled that, as there was nothing to show any change in the belief of Carlton from the first, they would be admissible; the court finding as a fact that the same state of belief as to death and chances of recovery existed then as at first. It appeared that Carlton lived for sixteen days, and that there were several days when hopes of his recovery were entertained by his physicians.

" The court, in the charge to the jury, instructed them fully as to the law in relation to dying declarations, in a manner not excepted to otherwise than as appears above; that they must be ' made under a sense of impending death and with a belief that his end was at hand; ' that the credibility of the evidence was

entirely within the province of the jury, and they were at liberty to weigh all the circumstances under which the declarations were made, including those upon which the court had already passed merely as preliminary to their admission ; and that the jury were to determine the state of mind under which the testimony was given, and its weight.'"

The judge also gave instructions to the jury in reference to the right of a person to use violence in self-defence, which were fully reported in the bill of exceptions, but are now immaterial.

*D. Saunders & C. G. Saunders,* ( *C. J. Noyes* with them,) for the defendants.

*C. Allen,* Attorney General, for the Commonwealth.

CHAPMAN, C. J. The defendants moved to quash the indictment, because it did not set forth which of the parties struck the blow, or what acts each did to make them principals, or which of them had the knife. The allegation in the indictment is, that the three defendants killed the deceased by striking and stabbing him upon the belly with a knife. At the trial, the district attorney did not claim that there was evidence that Reynolds used a knife, or that he encouraged, or knew of the use of a knife by any other person. Thereupon the other defendants asked the court to rule that there was a variance between the allegation and the evidence. This was properly overruled, as was also the motion to quash the indictment. It was proper to allege the use of the knife by all whom the grand jury found to be present aiding and abetting the person who had it ; for his act was the act of all. *Commonwealth* v. *Lucas,* 2 Allen, 170. *Commonwealth* v. *Chapman,* 11 Cush. 422. If upon the trial no sufficient evidence could be found against Reynolds, it was proper for the prosecuting officer to proceed against the others, and there would be no variance between the allegation and the proof if one or both of them should be proved guilty.

But the evidence of Cooney's remark, made during the affray, ought to have been excluded, if distinctly objected to. He was not connected with the parties, and could say nothing to bind them. Even if they heard his remark, it does not appear that they were reasonably called upon to answer it. To admit it for

the purpose of showing the defendants' possession of a knife, was to admit hearsay against them. *Commonwealth* v. *Kenney*, 12 Met. 235. *Commonwealth* v. *Harvey*, 1 Gray, 487. *Larry* v. *Sherburne*, 2 Allen, 34. The objection, however, was so general, and in a form extending to evidence most of which was competent, that we might not have set aside the verdict for the admission of this conversation.

The statements of Carlton, the deceased, were admitted as dying declarations ; the judge first finding as a fact that he believed his end was near, and that his chance for life was very slight. And he ruled that, if Carlton believed his end was near at hand, his declarations were admissible, although he might think there was a slight chance of life. The evidence as reported seems to sustain the judge's finding as to the facts ; and we have only to consider the correctness of his ruling upon the question of law. The admissibility of such declarations does not depend upon any particular forms of expression, for these will vary indefinitely ; but it depends upon the view which the deceased took of his own case when in imminent danger of death. What he said, and what his physician or friend said to him, may be evidence tending to show what his view was, as well as his actual condition. If he believed he was in a dying state, his declarations are admissible, although he lived as many as seventeen days after making them. *Commonwealth* v. *Cooper*, 5 Allen, 495. They are admitted on the ground that the solemnity of impending death is equivalent to the solemnity of an oath in restraining one from falsehood.

But the rule is stated in 1 Greenl. Ev. § 158, that, if he had any expectation or hope of recovery, however slight it may have been, and though death ensued in an hour afterwards, the declarations are inadmissible. The same rule is stated in other text books. 1 Taylor on Ev. (5th ed.) § 648. Rosc. Crim. Ev. (7th ed.) 32. The English cases are cited, and they sustain the rule. It has often been sustained in this country. *State* v. *Center*, 35 Verm. 378. *People* v. *Knickerbocker*, 1 Parker C. C. 302. *Starkey* v. *People*, 17 Ill. 17. *Smith* v. *State*, 9 Humph. 9. *Brown* v. *State*, 32 Miss. 433. *Moore* v. *State*, 12 Alab. 764. We think

the rule is well settled, that the declarations ought not to **have** been admitted, if he thought he had some slight chance of life.

We cannot regard the ruling of the judge as final, and not subject to exceptions. It was a ruling in matter of law ; and the life of a defendant may be involved in a ruling on this point. In many of the cases reported, the court have discussed the evidence on which the question turned.

As there must be a new trial, it is not necessary to discuss the objections which are made to the remarks of the judge in charging the jury on the subject of self-defence, since the question is not likely to be of any practical importance.

*Exceptions sustained.*