### COMMONWEALTH *vs.* MARTIN HANEY, JR.

Worcester.   Sept. 30. — Oct. 27, 1879.   ENDICOTT & LORD, JJ., absent.

The statement of a person, suffering from an injury of which he died four days afterwards, who said, when asked for the statement, "I can give it if I can have time," and "I cannot live long," is admissible as a dying declaration; and it is no objection to its admission, that the statement was made in answer to questions, and was reduced to writing in his presence and subscribed and sworn to by him.

INDICTMENT for the manslaughter of Patrick Cannon by kicking him in the abdomen, at Clinton.

At the trial in the Superior Court, before *Brigham*, C. J., for the purpose of laying the foundation for introducing evidence of Cannon's dying declarations, Christopher C. Stone was called as a witness, and testified as follows: "I am special justice of the

Police Court of Clinton, have seen the defendant and know Patrick Cannon; I think on October 10th last, on a Thursday, I went to the house of Patrick Cannon and saw him in a small bed-room lying in bed, propped up by pillows, very weak, so much so that it was hard at times to distinguish what he said; I should say he was from fifty to fifty-five years old; he said he could not live, when I first spoke to him, and used the word 'death;' I said, 'I hope it is not so bad as that;' he said, 'I cannot live;' I said, 'I want your statement;' he said, 'I can give it if I can have time;' again he said, 'I cannot live long;' he made a statement to me, in answer to my questions; I repeated his answers to a clerk who was in an adjoining room, the door between which and Cannon's bed-room was open, and he immediately wrote down Cannon's answers as I gave them to him; I afterward read to Cannon the answers so written by the clerk, and he said they were correct, and signed them by making his mark, and I attested his mark; he died, I think, four days afterwards."

The witness then produced the statement in writing, which purported to be signed by Cannon by his mark, to be attested by the witness, and to be sworn to before him. The statement charged the defendant with the assault alleged in the indictment, and narrated the particulars; but said nothing about the deponent's expectation of death.

Stone was about to testify as to the declarations made by Cannon to him in relation to the cause of his expected death, and was about to use the written statement to refresh his memory as to said declarations, when, upon the call of the defendant's counsel, the written statement was put in evidence and read to the jury, subject to the defendant's objection, that it did not appear affirmatively that Cannon, at the time of answering the questions put to him and affixing his mark to the statement, had no expectation and hope of recovery; and that it did not appear that he was then under the impression of almost immediate dissolution; and also by reason of the manner in which the statement was obtained.

There was evidence tending to prove that, when the witness Stone obtained the declarations from Cannon, the latter was suffering from an injury of which he subsequently died.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. Hopkins & J. W. Corcoran,* for the defendant.   1. The conversation of Cannon, prior to the written declarations, does not necessarily import the existence of a conviction and belief that death was about to ensue, or show conclusively that he expected and believed that death was imminent.   The expression " I cannot live " is qualified by his statement " I cannot live long," which imports that, if he was conscious that his wound was mortal, he expected to live for an appreciable space of time, and, while there is expectation of life, it cannot be said that the man is under the impression of almost immediate dissolution. Any hope of recovery, however slight, existing in the mind of the deceased at the time of making a declaration will render it inadmissible.   *Rex* v. *Hayward,* 6 Car. & P. 157.   *Rex* v. *Van Butchell,* 3 Car. & P. 629.   The declarations themselves contain no internal evidence of a mind under conviction and belief of immediate dissolution.

2. Parol evidence of dying declarations cannot be received, if the declarations have been reduced to writing.   *Trowter's case,* 1 East P. C. 356.

The declarations here are in the form of a deposition, and are incomplete, as they do not contain the questions to which they are responsive.   They are statements written down by the magistrate's clerk; and the clerk took them, not from the mouth of Cannon, but from that of the magistrate.   They are therefore the understanding of the clerk of the magistrate's language, and not the language of Cannon.

*G. Marston,* Attorney General, for the Commonweatlh.

AMES, J.   The rule as to the admissibility of dying declarations does not require that they should have been made while the sufferer is literally breathing his last.   It is enough that they were made when he understands that his injuries are fatal, and believes his death to be near at hand.   If he believed himself to be in a dying state, it is immaterial that he lived four days after making the declaration.   In *Commonwealth* v. *Cooper,* 5 Allen, 495, and in *Commonwealth* v. *Roberts,* 108 Mass. 296, the death did not occur till about seventeen days after.   It is true that, if he had any expectation or hope of recovery, however

slight, the declarations are inadmissible. But we find nothing in the bill of exceptions that indicates that he had any such expectation or hope. On the contrary, his language, at the time his declaration was reduced to writing, imports that he doubted whether he should live long enough to make his narration at all. It is not necessary that the written statement should show upon its face that it was made under the apprehension of impending death. That is a fact *dehors* the writing, and may be proved by parol testimony. *Regina* v. *Hunt*, 2 Cox C. C. 239. It was sufficiently proved at the trial.

We find nothing objectionable in the manner in which it was obtained. The fact that his declaration was reduced to writing in his presence, and subscribed and sworn to by him, cannot have any effect to impair the credit of what he said. The written paper was undoubtedly inadmissible as a deposition, but the words used by the deceased were none the less primary evidence for having been taken down by a bystander in writing. 3 Russ. on Crimes, (4th ed.) 269. They may be testified to by any witness who heard and remembers them. The written statement was a contemporary memorandum of what was said, and the witness had a right to refer to it for the purpose of refreshing his memory. It was not necessary that the examination of the deceased should be conducted in the manner of a formal examination of a witness at the trial. The omission of the interrogatories (if any were put) was immaterial, and we see no ground for supposing that we have not his words exactly as they were uttered.                              *Exceptions overruled.*