## COURT OF APPEALS,

### July, 1914.

# THE PEOPLE v. MICHAEL SARZANO.

### (212 N. Y. 231.)

(1.) MURDER—DYING DECLARATIONS.

The principle upon which dying declarations are received in evidence is that the mind, impressed with the awful idea of approaching dissolution, acts under a sanction equally powerful with that which it is presumed to feel by a solemn appeal to God upon an oath. The evidence, however, should be clear that the declarations were made under a sense of impending death without any hope of recovery.

(2.) SAME—INSUFFICIENCY OF PRELIMINARY PROOF TO WARRANT ADMISSION IN EVIDENCE OF STATEMENT AS TO DYING DECLARATION.

Upon a trial for murder it appeared that a strange man said to the deceased, when received at the hospital, that his condition was critical, and he was going to die, and they wanted an ante-mortem statement for purposes that might arise later, and the deceased said "all right, he would give it;" that thereupon he made a statement which was written upon a printed blank containing a clause to the effect that he made the statement "under the influence of an impression that I am about to die, and have no hopes of recovery from the effects of my wound. I make this statement under that impression;" that this latter clause was read to him with the rest of the statement, and he said it was true. *Held*, that the preliminary proof was too slight and indefinite to justify the admission of the statement in evidence as a dying declaration.

(3.) SAME.

The judgment, however, should not be reversed for the error since the guilt of the defendant was fully proven without it.

(Argued June 15, 1914; decided July 14, 1914.)

APPEAL from a judgment of the Supreme Court, rendered February 28, 1913, at a Trial Term for the county of Erie, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Thomas Murphy* and *Edmund L. Ryan* for appellant. It was error to receive the dying declaration of the deceased in evidence. (Wigmore on Evidence, §§ 1438–1441.)

*Wesley C. Dudley, District Attorney* (*Guy B. Moore* of counsel), for respondent. The ante-morten statement was properly received in evidence. (*People* v. *Chase*, 79 Hun, 296; 143 N. Y. 669; Underhill Crim. Ev. §§ 103-105.)

PER CURIAM:

The appellant was convicted of the crime of murder in the first degree in Erie county, on February 28, 1913. He shot Saverio Gragnanello November 17, 1912, at Buffalo. Gragnanello died January 22, 1913, as the result of the shooting, as the jury found.

The trial court erred in receiving in evidence as a dying declaration the statement made by the deceased on November 17, 1912, after he had been taken to the hospital. The statement was made to Dr. George B. Stocker, who was the deputy medical examiner for Erie county. Dr. Stocker told the deceased " that his condition was critical and we expected he would die from the way he was and we wanted his statement for use later." " I talked to him and told him the condition he was in and that he was going to die, and I wanted an ante-mortem statement for purposes that might arise later." The deceased said " all right," he would give it, and made statements which were written down and read to him by Dr. Stocker. The written statement was:

"Dying declaration of Salvita Greniera made on the 17th day of November, 1912, at Emergency Hospital in the City of Buffalo, County of Erie, to Geo. B. Stocker, Deputy Medical Examiner of said County.

"He says: I consider my condition critical, and am under the influence of an impression that I am about to die, and have no hopes of my recovery from the effects of my wound. I make this statement under that impression.

"I live at 164–8 Erie Street and am a saloonkeeper by occupation. My wife was in back room of saloon and this man Mike by name and I do not know his last name went back to this room and I went back there and asked him what he wanted and told him to go out. He drew a gun and said he would shoot me. I asked him what he wanted to shoot for and again told him to go out. He immediately shot me five times. Then he ran out of the back door. I never had any trouble with him before. He was not drunk. This was between seven and eight o'clock to-night.

his

SALVITAS (X) GRENIERA."

mark

The objection to its admission "on the ground there is nothing in evidence except the statement which the doctor wrote that showed he thought he was going to die and that his death was to be speedy" was overruled with an exception.

The learned district attorney seems confident that the statement was admissible. He points the existence of the three wounds, that the deceased was about to undergo an operation, that a doctor told him he was in a critical condition and they did not expect him to live, and that he stated he was under the influence of an impression or under an impression that he was about to die. The statements of the district attorney must, however, be modified in these particulars: There is no proof

that the deceased knew that he was about to undergo an operation, or that the person talking to him was a doctor, or that he stated that he was under the impression that he was about to die. The statement was upon a printed blank and the only affirmative statements of the deceased it contains are those including and following the words "I live at 164–8 Erie Street." Above those the blanks of the printed form were properly filled and the entire statement read to him, and he said it was true.

The principle upon which dying declarations are received in evidence is that the mind, impressed with the awful idea of approaching dissolution, acts under a sanction equally powerfully with that which it is presumed to feel by a solemn appeal to God upon an oath. The declarations, therefore, of a person dying under such circumstances are considered as equivalent to the evidence of the living witness upon oath. (Commonwealth v. Roberts, 108 Mass. 296.) Safety in receiving such declarations lies only in the fact that the declarant is so controlled by a belief that his death is certain and imminent that malice, hatred, passion and other feelings of like nature are overwhelmed and banished by it. The evidence should be clear that the declarations were made under a sense of impending death without any hope of recovery. (People v. Conklin, 175 N. Y. 333.) Statements made by a doctor to and accepted by a declarant that there was no chance of his recovering are admissible. (Commonwealth v. Brewer, 164 Mass. 577; Brotherton v. People, 75 N. Y. 159.) If the declarant thinks there is a slight chance of living the declarations are inadmissible. (Commonwealth v. Roberts, 108 Mass. 296; Commonwealth v. Haney, 127 Mass. 455.) The mere fact that the doctor told declarant that recovery was impossible is insufficient. There must be proof that the declarant believed it and had no hope of recovery. (Peak v. State, 50 N. J. L. 179; People v. Chase, 79 Hun, 296; affd., 143 N. Y.

669; People v. Evans, 40 Hun, 492.) Declarant's certainty that he is about to die and lack of all hope of recovery may be proven by his express language or conduct, or inferred from his physical condition and obvious danger, or evidence of his acquiescence in the opinions of doctors or others stated to him, or other adequate circumstances. (Williams v. State, 168 Indiana, 87; State v. Sullivan, 20 R. I. 114.)

In the present case the preliminary proof was too slight and indefinite to justify the admission of the statement. The transaction, apart from the wounds, was this: A strange man said to the deceased when received at the hospital that his condition was critical and he was going to die and they wanted an ante-mortem statement for purposes that might arise later, and the deceased said " all right, he would give it; " and the statement that he made the statement under " the influence of an impression that I am about to die, and have no hopes of my recovery from the effects of my wound, I make this statement under that impression," was read over to him with the other parts of the statement and said by him to be true. The declarant did not ask for wife, children, friends or priest or by word or act indicate that he believed his death certain and imminent. He did not say or show that he believed he would not recover and was without any hope whatsoever of living. It would be extending the rule beyond the decision in any case we have read or found and we think beyond safety to approve the reception in evidence of the statement. But we do not think we should reverse the judgment because of its reception. The guilt of the defendant was fully proven without it. It, in fact, added nothing to the case. The facts stated in it were proven *aliunde* and with great fullness and detail. It is inconceivable that the verdict of the jury would have been different had it been rejected.

The judgemnt of conviction should be affirmed.

WILLARD BARTLETT, Ch. J., WERNER, CHASE and COLLIN, JJ., concur; HOGAN and CARDOZO, JJ., concur in result; CUDDEBACK, J., not voting.

Judgment of conviction affirmed.