THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CHARLES WEISS and Another, Defendants.

City Magistrate's Homicide Court, Borough of Manhattan, City of New York, October 26, 1932.

*Thomas C. T. Crain, District Attorney [A. Delli Paoli, Assistant District Attorney,* of counsel], for the People.

*Sol. H. Eisler* for the defendant Weiss.

*Morton Lexow,* for the defendant Petrone.

McGEE, LEONARD A., J. The defendants were held herein on short form affidavits charging them with the homicide of Susan Gee, alleged to have resulted from a criminal abortion. The defendant Weiss, a physician, is charged with performing the criminal abortion at his office, 1391 Madison avenue, New York county, on September 17, 1932, and it is alleged that resulting therefrom Susan Gee died at the Cornwall Hospital, Cornwall, N. Y., on September 20, 1932. The defendant Petrone is charged with having aided and abetted Weiss in the commission of the crime. The usual stipulation was made that the testimony taken upon the short affidavit should be deemed the testimony upon the hearing if a full complaint is ordered.

The only evidence adduced by the People which would establish the commission of the crime and which would inculpate either defendant was a written statement signed by the deceased and the testimony of the coroner of Orange county as to statements made to him by the deceased in the Cornwall Hospital the day before her death. If these statements are admissible as dying declarations, the defendants must be held for the action of the grand jury. If these statements must be excluded, there is nothing left upon which to hold the defendants.

Decision was reserved by me upon the admissibility in evidence of these written and oral statements alleged to have been made by Susan Gee to the coroner.

The learned district attorney points out that upon a hearing to commit for the action of the grand jury a magistrate need not exact the full measure of proof which would be necessary to secure a conviction of the crime in a trial court. True, the People have not

the same burden in this court to show beyond a reasonable doubt that the crime has been committed and that the defendant is guilty thereof. There must, however, be a *prima facie* case proven, such a case that a trial court would not be bound to grant a motion to acquit at the close of the People's case. There must be reasonable ground for believing that a crime has been committed and that the defendant is guilty thereof. (Code Crim. Proc. § 208; *People ex rel. Willett* v. *Quinn*, 150 App. Div. 813.)

Less proof is required as cause for issuing a warrant and apprehending a defendant. No purpose would be served by a magistrate's hearing if no more proof is required than is contained in a short form affidavit or complaint upon information and belief.

The sufficient cause for believing the defendants guilty must, of course, be based upon the legal evidence before me. I cannot act upon suspicion based upon statements of the deceased, unless they are properly in evidence as dying declarations.

I have no doubt that the coroner and the doctor told the truth before me. I believe that the deceased made the statements attributed to her by the coroner and the attending physicians. If, however, they are not dying declarations and admissible as an exception, they come under the ban of the hearsay rule. It does not follow that because the coroner told the truth that the statements of the deceased were true.

Section 398-a of the Code of Criminal Procedure expressly provides that "In all prosecutions under and in pursuance of article six of the penal law, the dying declarations of the woman whose death is produced by any of the means set forth in said article, shall be admitted in evidence subject to the same restrictions as in cases of homicide."

Susan Gee, the deceased, was twenty-six years of age, a trained nurse and a resident of Sloatsburgh, N. Y., according to the statement which she made the day before her death, which is offered as a dying declaration, and it relates that the deceased on September 17, 1932, with her friend, the defendant Petrone of Suffern, N. Y., drove to New York city in the deceased's car for the purpose of having a criminal abortion performed. The deceased and her friend went to the office of the defendant Weiss at 1391 Madison avenue and at that time the alleged criminal abortion was performed. Deceased was in great pain and remained in the office until four o'clock P. M., then left in the company of the defendant Petrone, drove to Sloatsburgh where she remained overnight with a friend. On the following day, which was a Sunday, Dr. McMenamin was called to attend Susan Gee at her home. She was removed immediately to the Cornwall Hospital. The alleged dying declaration

was made at about four o'clock P. M. on the following day, Monday afternoon, September nineteenth, in the Cornwall Hospital. She died Tuesday morning, September twentieth.

I have carefully examined the testimony and have come to the conclusion that the statements offered are not admissible in evidence, since the People have failed to lay a proper foundation upon which to admit them as a dying declaration.

As a general rule, statements, whether oral or in writing, made by a person who is the victim of a crime and who dies thereafter, are inadmissible under the hearsay evidence rule. As there is no opportunity to test the truth by cross-examination, and as the defendant in a criminal case, under the right of confrontation, is entitled to be faced by his accuser, the statements of the victim of a crime who has died cannot be received in evidence. The exception to the rule under which dying declarations are admitted grew up in the common law. This type of testimony is not regarded favorably by the courts which have always recognized that it is extremely dangerous.

In *People* v. *Becker* (215 N. Y. 126, at p. 147) the Court of Appeals said: " The admission of dying declarations even to the extent to which they are now received is not universally approved; and the courts should be cautious lest they enlarge the rule by judicial construction."

Dying declarations are received in evidence upon the theory that the mind, impressed with the awful idea of approaching dissolution, " acts under a sanction equally powerful with that which it is presumed to feel by a solemn appeal to God upon an oath." It is the belief that a person will not wish to face his Maker with a lie on his lips and that death being imminent, malice, hatred, passion and other unholy feelings are banished, which supports this exception.

It must not only appear that death is imminent and that the declarant is of the belief that she is about to die, but it must definitely appear that she has abandoned all hope of recovery. (*People* v. *Kane*, 213 N. Y. 260, at pp. 277–279; *People* v. *Sarzano*, 212 id. 231, 234; *People* v. *Chase*, 79 Hun, 296; affd., 143 N. Y. 669; *People* v. *Falletto*, 202 id. 494; *People* v. *Evans*, 40 Hun, 492; 30 C. J. 261.)

In *People* v. *Sarzano* (212 N. Y. 231, at p. 235) the court, considering the principle under which dying declarations can be received in evidence, said: " The principle upon which dying declarations are received in evidence is that the mind, impressed with the awful idea of approaching dissolution, acts under a sanction equally powerful with that which it is presumed to feel by a solemn appeal to God upon an oath. The declarations, therefore, of a person dying under

such circumstances are considered as equivalent to the evidence of the living witness upon oath. (*Commonwealth* v. *Roberts*, 108 Mass. 296.) Safety in receiving such declarations lies only in the fact that the declarant is so controlled by a belief that his death is certain and imminent that malice, hatred, passion and other feelings of like nature are overwhelmed and banished by it. The evidence should be clear that the declarations were made under a sense of impending death without any hope of recovery. (*People* v. *Conklin*, 175 N. Y. 333.) * * * If the declarant thinks there is a slight chance of living the declarations are inadmissible. (*Commonwealth* v. *Roberts*, 108 Mass. 296; *Commonwealth* v. *Haney*, 127 Mass. 455.) The mere fact that the doctor told declarant that recovery was impossible is insufficient. There must be proof that the declarant believed it and had no hope of recovery. (*Peak* v. *State*, 50 N. J. Law, 179; *People* v. *Chase*, 79 Hun, 296; affd., 143 N. Y. 669; *People* v. *Evans*, 40 Hun, 492.)''

In *People* v. *Kane* (*supra*) the same requirements were again emphasized by the Court of Appeals, which said (at p. 279): '' If they [referring to the conditions which must exist in the declarant's mind] are disregarded in the slightest degree the evidentiary value of the declaration is wholly destroyed.''

In *People* v. *Falletto* (*supra*) the court said (at p. 499): '' Dying declarations are dangerous, because made with no fear of prosecution for perjury and without the test of cross-examination, which is the best method known to bring out the full and exact truth. The fear of punishment after death is not now regarded as so strong a safeguard * * * as it was when the rule admitting such declarations was first laid down.'' In the same case (at p. 500) the court held: '' The absolute requirements preliminary to the admission of such evidence are that there must be clear proof of the certainty of speedy death, and that the declarant had no hope of recovery.''

The learned district attorney has misread the written statement which he offered as a dying declaration. Nowhere does it state that the declarant has abandoned all hope of recovery as is stated in the district attorney's brief.

The statement which has been marked '' People's Exhibit 1 '' for identification, reads: '' I, Susan Gee, age 26 years, residence Sloatsburgh, New York, being duly sworn, do desire to make this statement of my own free will, without any force being used against me whatsoever.'' After setting forth the details of the alleged crime which, as I have said, implicates both defendants, the statement concludes: '' I know what it means to tell the truth and this is the truth in this matter. This statement is made at 4 o'clock on Mon-

day afternoon, September 19th, 1932, at Cornwall Hospital, Cornwall, N. Y."

The statement, it will be noted, was taken in sworn form, which is unusual for a purported dying declaration. Counsel for the defendants contend that by administering an oath to the deceased, the coroner destroyed the effect of the instrument as a dying declaration. I have been unable to find, after a close examination of the authorities, that this contention has ever been made. In my opinion, however, if this statement otherwise meets the requirements of a dying declaration it does not lose its character as such because it was taken as a deposition or in sworn form. There is merit, however, to the contention of counsel that the fact that the deceased was sworn is some evidence to establish that the statement was not a dying declaration. The truth cannot be elicited from a dying person by the threat of prosecution for perjury. The swearing of the witness would also seem to indicate that the coroner did not regard the deceased as being in extremis. It would not seem that the statement was being taken as a declaration upon Death's doorstep, the ordinary legal procedure being followed.

It is not difficult to understand why so many attempts to obtain a dying declaration fail. It is a cruel and inhuman act to have to impress upon a dying person, not only that she is in a desperate condition, but that she must not entertain the slightest hope of recovery so that a statement about to be taken may be of use to the authorities. But the law is clear, it is not sufficient that the deceased be informed that she will in all probability die. It is not sufficient that she be informed that she may not recover. The declarant must know from the information communicated to her and from an understanding of her own condition that she has absolutely no hope of recovery.

The facts in this case do not show that Susan Gee abandoned all hope of recovery. There is nothing in the written statement to indicate it. She made a statement at four o'clock on Monday afternoon, September nineteenth, and thereafter about six o'clock went on the operating table. There must have been some slight hope of saving her life.

The coroner testified that he said to the deceased when he entered her room to take her statement: " I am very sorry to have to come in to a case of this kind, realizing as I do that your case is very serious and that you may not recover." To which the deceased replied: " Well, I know, but I can't help it now; it is too late and I only want to do what is right; I want to tell you the truth about everything." The coroner also testified that he said to Susan Gee, " You realize that this may be the last statement you ever make in

this case." To this the deceased replied in the affirmative. On cross-examination, the coroner was asked, " You told her that she might die?" And the coroner answered, " Yes." All through this testimony appears clearly the understandable reluctance of the coroner to impress upon the deceased that she had no chance whatever of recovery. Again, the coroner testified in answer to a question that he administered the oath and had the deceased sworn so that in case anything was false she could be prosecuted for perjury.

I admitted in evidence testimony as to conversations with the deceased of the physicians who attended her. These statements of the physicians are admissible under the authorities for the purpose of showing the frame of mind the deceased must have been in and her belief that she would not live.

Dr. Thomas D. McMenamin testified that before he removed her from her home on Sunday, he told the deceased that " in my opinion she was in a very desperate condition." The next day, which was Monday morning, September nineteenth, the doctor told her that " in my opinion she was not going to make the grade." This expression, it appears, the deceased as a trained nurse would understand. When Dr. McMenamin saw her again that afternoon at three o'clock, an hour before she saw the coroner and made the statement in question, he did not discuss her condition with her. As I have already pointed out, several hours after the coroner took the statement the deceased went on the operating table, and she died the following day.

Dr. Winston F. Harrison, a resident physician at the Cornwall Hospital, testified that he did not tell the deceased her condition, but that he had a conversation with the deceased around noon on Monday, which was after Dr. McMenamin had told her she would not make the grade. At this time the deceased said: " Why should I make an effort, I am not going to recover?" On further examination, Dr. Harrison, pressed by the district attorney with somewhat leading and hence objectionable questions, would go no further than to say that Susan Gee stated " that she knew that her condition was extremely serious." And being further asked by the district attorney: " Q. And that there was no hope of recovery? A. She did not say that."

It seems very clear to me that the proper foundation for a dying declaration has not been laid by the People and that I cannot admit the statement in evidence as a dying declaration. It is not admissible on any other theory.

In *People* v. *Sarzano* (*supra*, 235) the court held: " The mere fact that the doctor told declarant that recovery was impossible is

insufficient. There must be proof that the declarant believed it and had no hope of recovery."

Counsel for the defendants also points out that the deceased lived for a considerable period of time after making the dying declaration. While the length of time which a person lives after making the declaration may be considered on the question of the state of mind of the person, the fact that a person lingers on for a long time after making the declaration would be no ground to exclude it as a dying declaration if it appears clearly that at the time it was made by the deceased death was imminent and that the deceased had no hope of recovery. (*People* v. *Falletto*, 202 N. Y. 494.)

The declaration was also objected to upon the ground that the coroner did not transcribe the entire conversation which he had with Susan Gee. It is the better practice to include the entire conversation, but it clearly appears here from the testimony of the coroner that the written statement included substantially all of the essential facts.

Having determined to exclude the alleged dying declaration, there is no evidence upon which these defendants can be held for the crime charged. It is not the function of this court to suggest or formulate policy which the district attorney should follow in these matters. Yet I might say in passing that even if the defendant Petrone were to be given immunity and were to testify as a State's witness against the principal defendant, I very much doubt that a *prima facie* case could be made out.

The defendants are discharged.