THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL NIEVES, Defendant-Appellant.

First Department, May 2, 1985

APPEARANCES OF COUNSEL

*Robert S. Dean* of counsel (*William E. Hellerstein,* attorney), for defendant-appellant.

*Lisa E. Sarnoff* of counsel (*Mark L. Freyberg* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

SANDLER, J.

■ ■ On this appeal from defendant's conviction of manslaughter in the second degree, the central issue is presented by the contention that the trial court erroneously admitted into evidence statements of the deceased identifying the defendant as having stabbed her, statements made in a hospital to which the deceased had been brought after the stabbing, and during a brief lucid period between her arrival in the hospital and her death. After a pretrial hearing to determine the admissibility of the statements in issue, the trial court ruled them admissible as dying declarations. We are in agreement that the statements were properly admitted into evidence. However, a majority of this court is of the view that under the presently controlling rules of law the statements were admissible, not as dying declarations, but rather as excited utterances.

These are the facts disclosed in the hearing minutes. On January 16, 1982, at approximately 8:30 P.M., Josephine Gonzalez was carried into the emergency room at Bronx Lebanon Hospital by the defendant Angel Nieves and Herberto Reyes. Ms. Gonzalez wore summer-weight clothing and was very cold and wet. The defendant and Reyes told the doctor and nurse on duty that she had been stabbed and that they had waited some 20 minutes before being able to find a taxicab.

An examination disclosed a half-inch incision in the areola of Ms. Gonzalez' breast, alerting the doctor to the possibility of damage to the heart. She was in shock, conscious but unable to speak. The nurse had difficulty ascertaining her blood pressure and her body temperature was so cold that it would not register. Her pulse was slow and weak.

Emergency procedures were undertaken in an effort to stabilize her vital signs and to warm her body, the initial procedures taking some 10 to 15 minutes. Some 10 minutes thereafter, as Ms. Gonzalez' condition temporarily improved, she was able to respond to questions asked by the nurse. First Ms. Gonzalez gave her name and address. When asked what happened, she stated that she had been stabbed. When asked, "Who stabbed you", Ms. Gonzalez pointed to the defendant, standing in the

emergency room, and said, "Angel". She added that while she and defendant were at a party, defendant became jealous and stabbed her. She pointed to a scar on her neck and told the nurse that the defendant "did this before and then he did this now."

The nurse called hospital security, and thereafter Police Officer Perez responded to the emergency room at about 9:00 P.M. In answer to the officer's question, Ms. Gonzalez again said, "Angel stabbed me". Thereafter the officer removed the defendant from the emergency room, searched him and recovered a knife from his right-hand trouser pocket.

Ms. Gonzalez was lucid for a period of some 20 to 25 minutes. During that period she complained of experiencing terrible chest pains and repeatedly stated that she did not want to die.

As explained by the doctor on duty, the knife had punctured both her heart and pericardium. As Ms. Gonzalez' vital signs normalized, her heart pumped blood into the pericardium and the abnormal pressure "strangulated" her heart. Efforts to alleviate the pressure failed to relieve the condition. After suturing the hole in Ms. Gonzalez' heart, the doctor hand-massaged her heart for 45 minutes before pronouncing her dead.

Analysis of the issues here presented appropriately starts with the notable comment of the Court of Appeals in *People v Arnold* (34 NY2d 548, *revg* 41 AD2d 573) a case in which essentially the same issues were addressed under circumstances strikingly similar in legally significant respects to those here. As described in the Appellate Division's decision, the deceased, mortally wounded from a gunshot wound, was found by a passerby at 1:30 in the morning, slumped over the steering wheel of a station wagon in which she had been seen riding on the previous evening with the defendant. The deceased said that she wanted to get to a hospital and that she had been shot. Asked who shot her, her first response was, "I did. Get me to a hospital. I am dying." When it was pointed out that she could not have shot herself in the back, she answered, "No, my boy friend shot me" (41 AD2d, at p 574).

In reversing the defendant's conviction for manslaughter, the Appellate Division held that the statement identifying her "boy friend" as the shooter had been erroneously admitted into evidence. As developed in the opinion, the statement was not admissible as a dying declaration because, to be so admissible (41 AD2d, at p 574) "it must be shown that the decedent believed she was dying and had no hope of recovery, and, if, as here, there is a belief that there is the slightest chance of recovery, the statement is inadmissible. (*People* v. *Allen,* 300 N. Y. 222.)"

Similarly, the statement was found to be inadmissible as a "spontaneous statement" because that doctrine requires that "the utterance must spring spontaneously and instinctively from the stress and excitement caused by the act of homicide, and must be made soon after the act so as to preclude the idea of deliberation, fabrication and design * * * Decedent's statement here was made in answer to an inquiry from the witness and there is no evidence as to the time interval between the assault and the declaration" (41 AD2d, at p 574).

The Court of Appeals reversed and reinstated the conviction, finding that if there had been error in admitting the statement, the error was harmless in view of the overwhelming evidence of guilt. The Court of Appeals went on to make the following comment, perhaps one of the most important judicial pronouncements on evidence in many years (34 NY2d, at p 549): "Were it necessary to determine whether the deceased's utterance fit within an exception to the hearsay rule, it is observed that this court has in recent years emphasized that the hearsay doctrine has been too restrictively applied to exclude otherwise reliable evidence from the jury".

In thus clearly signalling that it would have been disposed to find the statement in *Arnold* (*supra*) admissible if required to reach the issue, the Court of Appeals did not specify which of the hearsay exceptions it implicitly deemed applicable, if indeed the court did not find the statement admissible under both. What seems to be unmistakably clear, however, is that the Court of Appeals availed itself of the occasion to underline the central judgment that issues of the kind here presented were better decided, not through a mechanical application of established formulas, but rather on the basis of the trustworthiness of the proffered evidence under all the relevant circumstances.

■ Turning first to the hearing court's determination that the statements of the deceased were admissible as dying declarations, it is clear that the record fails to establish the traditional requirements for admissibility under that doctrine as they were reaffirmed in *People v Allen* (*supra*), the latest authoritative statement of the applicable principles by the Court of Appeals. In *Allen,* the Court of Appeals restated (at p 227), "the absolute and unvarying necessity for these two showings, at least: that 'the declarant was *in extremis*' and 'was under a sense of impending death, without any hope of recovery'". The court (p 227) went on to quote the following from *People v Sarzano* (212 NY 231, 234-235): " 'Safety in receiving such declarations lies only in the fact that the declarant is so controlled by a belief that his

death is certain and imminent that malice, hatred, passion and other feelings of like nature are overwhelmed and banished by it. The evidence should be clear that the declarations were made under a sense of impending death without any hope of recovery' ".

Measured by these standards, it is apparent that the statements in this case were not admissible as dying declarations. It is true that Ms. Gonzalez was *in extremis,* and it may be fairly inferred that she was aware that her condition was grave, but her repeated statements that she did not wish to die simply do not sustain the inference that her declarations "were made under a sense of impending death without any hope of recovery".

It may be, and we are inclined so to believe, that the comment of the Court of Appeals in *People v Arnold (supra)* foreshadows some relaxation in the rigors of the rule as it has historically developed. From a contemporary point of view it appears possible to envisage situations not comporting with the traditional criteria in which the statements of a person *in extremis* would appear to be sufficiently trustworthy to merit consideration by a jury. It seems a reasonable inference that the Court of Appeals in *Arnold* was disposed to consider sufficiently trustworthy for admission under the circumstances presented the statement of the mortally wounded deceased that she was dying, even though it was accompanied by her appeal to be taken to the hospital. (*Cf. People v Liccione,* 63 AD2d 305.)

The equivalent statements of the deceased in this case are plainly more equivocal, disclosing a fear of death rather than an expectation of death. Although on a realistic evaluation of the total situation her statements identifying the defendant appear to be highly trustworthy, we are not persuaded that their admissibility can be justified as dying declarations under the present controlling rules of law.

A far stronger case for the admissibility of the statements in issue is presented by the rules as they have evolved in recent years with regard to excited utterances. The fullest and most comprehensive exposition of these principles was set forth by the Court of Appeals in *People v Edwards* (47 NY2d 493, 497): "[T]he court must ascertain whether, at the time the utterance was made, the declarant was under the stress of excitement caused by an external event sufficient to still his reflective faculties, thereby preventing opportunity for deliberation which might lead the declarant to be untruthful. The court must assess not only the nature of the startling event and the amount of time which has elapsed between the occurrence and the statement,

but also the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth. Above all, the decisive factor is whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection."

It is true that the factual circumstances in *Edwards* (*supra*) were quite different from those disclosed in this case, the first of the utterances admitted in *Edwards* having been contemporaneous with the act of violence, and the second of them, in response to a question from another, occurring very shortly after the event. These factual differences in no way diminish the significance for our purposes of that which was said in *Edwards,* for it is apparent that in *Edwards* the Court of Appeals quite carefully undertook to articulate broad principles of general application.

In *People v McCullough* (73 AD2d 310) this court had occasion to apply the principles set forth in *Edwards* (*supra*) in a factual situation somewhat closer to that presented here. The deceased in that case had been shot six times, and was pumping blood from the stomach, when he was spoken to by a witness some 10 minutes after the shots were fired. As the witness testified to the event, she asked the deceased (at p 311): " 'My God, who shot you?' He answered 'Na.' Mrs. Miller said 'Who?' Outlaw repeated 'Na.' Having heard the name before, Mrs. Miller responded 'That's your friend.' Outlaw replied 'Yes, ma'am.' Mrs. Miller then asked, 'Why did he shoot you?' Outlaw answered 'I was coming out of the building.' "

In sustaining the admission of these statements as excited utterances, this court observed (73 AD2d, at p 314): "In such a setting, where the span of 10 minutes is virtually meaningless, time is 'not measured in minutes or seconds it is measured by facts.' (*People v Gilbert,* 199 NY 10, 24.) Realistically viewed, the trauma produced by the shooting was as acute 10 minutes after the shooting as it was in the first moments."

As the court further said in *McCullough* (at p 314): "The touchstone of the admissibility of the excited utterance or spontaneous declaration is its reliability. 'What the law altogether distrusts is not after-speech but after-thought.' (*Travelers Ins. Co. v Sheppard,* 85 Ga 751, 775-776.)"

In the comment to proposed Code of Evidence for the State of New York § 803 (c) (1), the following illuminating summary of the present state of law is set forth (at p 189 [1982 ed]): "With respect to the element of time, the important consideration is the duration of the state of excitement * * * The amount of time elapsed between observing and speaking is just one factor.

Factors such as shock, unconsciousness, or pain should also be considered along with other factors that may prolong the period during which the risk of fabrication is at an acceptable minimum."

■ Applying the principles comprehensively and carefully delineated in *Edwards* (47 NY2d 493, *supra*) to the facts established in the hearing, we think it clear that the statements in question were properly admissible as excited utterances.

Ms. Gonzalez had been stabbed in the heart. When brought to the hospital she was in a state of shock, conscious but unable to speak. Although the record discloses no direct evidence as to her condition prior to her arrival at the hospital, the inference is surely a compelling one that she was at no time in a condition in which she had a "significant opportunity to deviate from the truth." The first identification of the defendant occurred within a short time after Ms. Gonzalez was able to speak, and at a time when the defendant was present in the emergency room. It is not a tenable proposition that during this interval of time she reflected on the situation and determined falsely to accuse one of the two persons who had brought her to the hospital. The fact that her statements were in response to questions is of no moment when weighed against the central circumstance that on any realistic evaluation of what occurred her mind was wholly dominated by the overwhelming event which had brought her to the hospital in such a grave physical condition. The conclusion seems to us inescapable "that the remarks were not made under the impetus of studied reflection".

No doubt the later statement to the police officer reaffirming the identification of the defendant after an additional period of time would have presented a closer question if it had been the first such statement. Under the circumstances clearly disclosed at the hearing, we see no reason to doubt the reliability of the latter statement which merely repeated that which had already been said under circumstances convincing as to trustworthiness.

■ We perceive no legal significance in the circumstance that the District Attorney who conducted the pretrial hearing agreed at its conclusion that the statements were not admissible as excited utterances. *People v Dodt* (61 NY2d 408), on which defendant relies for the proposition that the court may not sustain the admissibility of evidence because an erroneous reason was accepted by the trial court, involved a constitutionally mandated pretrial hearing turning on the claim that a lineup identification of the defendant was an unlawful exploitation of the defendant's illegal arrest and detention. That authority has

no relevance to a pretrial hearing conducted by the court to determine whether proposed evidence was within an exception to the hearsay rule.

As was observed in *People v Liccione* (63 AD2d 305, 316, *supra*) there is no requirement for such a pretrial hearing, although undeniably it is an appropriate method for deciding such an issue. The issue of admissibility could also have been determined by the trial court during the trial itself on the basis of a foundation established by evidence elicited by the District Attorney.

We know of no authority for the view that a judgment of conviction may be reversed on the basis of evidence properly admitted at trial because the District Attorney gave the wrong reason in arguing for its admission, and the trial court accepted that reason.

Accordingly, the judgment of the Supreme Court, Bronx County (Dorothy Kent, J.), rendered October 28, 1982, convicting defendant, after a jury trial, of manslaughter in the second degree and sentencing him to an indeterminate term of 4 to 8 years in prison, should be affirmed.

KUPFERMAN, J. P. (concurring). The opinion of my colleague Sandler, J., well sets forth the problem. While I concur as to the admissibility of the statements as an exception to the hearsay rule, I believe that the facts lend themselves more readily to an exception for a dying declaration than for an excited utterance or spontaneous declaration.

I think it should be emphasized that the decedent was taken into an emergency room conscious but in shock, from a knife wound in her chest. She complained of terrible chest pains and repeatedly said, "I don't want to die". Further, she was described by the nurse as looking "scared".

SULLIVAN and BLOOM, JJ., concur with SANDLER, J.; KUPFERMAN, J. P., concurs in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered on October 28, 1982, unanimously affirmed.