■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY BRUNSON, Appellant.—Judgment, Supreme Court, New York County (Peter J. McQuillan, J.), rendered on June 19, 1985, convicting defendant, after a jury trial, of manslaughter in the second degree and criminal possession of a weapon in the third degree, and sentencing him to concurrent indeterminate prison terms of 3 to 9 years on the manslaughter count and 1½ to 4½ years on the weapon count, unanimously affirmed. The matter is remanded with a direction that defendant surrender for the execution of sentence.

Originally indicted for murder, defendant does not challenge the sufficiency of the proof at trial convicting him of recklessly causing the death of his fiancée, Tracey Alves, by shooting her in the eye with a .44 caliber magnum pistol (Penal Law § 125.15 [1]), nor does he raise any issue with respect to the conviction on the weapon count (Penal Law § 265.02 [1]). His main contention on appeal is that after conducting a four-day preliminary hearing, the trial court erred when it denied defendant leave to present evidence before the jury that during the 12-day interval during which Tracey lingered after the shooting prior to her death, she gave statements to Dr. Ryszard Pisarski, a longtime friend of defendant, and to her mother, Susan Howuarth, exculpating defendant from responsibility for the shooting, and possibly implicating a third person present at defendant's apartment at the time of the crime. We agree with the conclusion of the trial court that this evidence lacked sufficient guarantees of trustworthiness to justify its receipt by the jury *(see, People v Shortridge,* 65 NY2d 309).

In its opinion finding nonadmissibility, the trial court undertook to apply the analysis contained in section 804 (b) (6) of the Proposed New York Code of Evidence submitted to the 1982 session of the Legislature by the New York State Law Revision Commission (1982 NY Legis Doc No. 65 [A]), which states that a hearsay statement: "not specifically covered by any of the foregoing exceptions [to the hearsay rule] but having substantial guarantees of trustworthiness, [may be

received] if the court determines that the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts."

Neither the People nor the defendant argues that the standard contained in the proposed code is inconsistent with existing State law, or contests its application by the trial court.

The parties are also in agreement that the requirements for application of the rule are met with one significant exception: whether the proffered evidence has "substantial guarantees of trustworthiness". Although determination of such a matter would normally lie within the sound discretion of the Trial Judge, we have no hesitancy in saying that if the court here had found the evidence competent, such a finding would constitute clear error.

The bullet which eventually ended Tracey's life traversed the base of her skull and, on a downward path, severely injured her cervical-spinal cortex. As a result, during the hospitalization which preceded her death, Tracey was completely paralyzed from the neck down. An Episcopal priest, Father John Osgood, who was the spiritual adviser of Tracey's mother, attempted to institute a means of communication with the highly sedated and inert patient. A code was established between Father Osgood and Tracey whereby one blink of her single uninjured eye would signify "Yes" and two blinks would signify "No". At the preliminary hearing defendant sought to establish that by use of this blinking code Tracey informed Dr. Pisarski that defendant did not do the shooting and that another person was present when the shot was fired. Mrs. Howuarth also testified to an occasion when Tracey had told her by means of the blinking code that defendant had not done the shooting.

This testimony and any other of similar import was properly excluded for the following reasons.*

(1) The medical evidence at the preliminary hearing cast considerable doubt upon the capacity of Tracey to remember anything about the shooting. No expert witness could venture an opinion as to how long Tracey's brain had been deprived of

---

* It should be noted that the testimony did not qualify under the dying declaration exception to the hearsay rule (see, People v Sarzano, 212 NY 231), because all agreed that Tracey had no insight into the gravity of her condition and, understandably, no one undertook to impair her morale by informing her.

oxygen, a loss which would directly impact upon the memory function. On the other hand, the People's medical expert testified that Tracey would have strong psychological motives to fabricate either by way of intentionally shielding her lover, or by subconsciously suppressing the truth out of fear or love.

(2) There was evidence at the hearing that the blinking code may have broken down completely. Tracey's medical chart contained a entry that the code was precisely the reverse of what Dr. Pisarski and Mrs. Howuarth believed—namely, that there was one blink for "No" and two blinks for "Yes". This, of course, casts grave doubt upon the quality of the proposed evidence, especially when it is noted that the deceased's answers were all responsive to leading questions. In addition, there were episodes of Tracey's rapid, involuntary blinking, which confounded any interpretation other than extreme agitation.

(3) Both Dr. Pisarski and Mrs. Howuarth conceded that they were biased in defendant's favor. Dr. Pisarski was so aware of his desire "to hear what he wanted to hear" that he unsuccessfully attempted to have a neutral witness present during his interviews. Mrs. Howuarth admitted that she could not believe that defendant had been the perpetrator of the shooting.

Thus the threshold validity of defendant's offer of proof depended upon its validation in three distinct aspects: (i) the declarant's capacity to observe and recall, as well as her desire to tell the truth unaffected by repressed anxiety, (ii) the reliability of the transmission code used to transmit information, and (iii) the accuracy, skill, and impartiality of the two proposed reporting witnesses.

Because each of these aspects was seriously undermined, we fully endorse the conclusion of the trial court that the proposed evidence was wholly incompetent. We reject defendant's contention that a more relaxed standard of admissibility should be extended to a hearsay offer tendered by the defendant in a criminal trial as opposed to such an offer by the prosecution. The very authority cited by defendant states to the contrary (Perry v Rushen, 713 F2d 1447, 1450 [9th Cir], cert denied 469 US 838).

We have examined the other two points raised by defendant (that one of the jurors was unqualified, and that the sentence imposed upon him was excessive) and find them to be without merit.

Accordingly the conviction is affirmed and the matter is

remanded for defendant's surrender. Concur—Kupferman, J. P., Ross, Milonas, Wallach and Rubin, JJ.