M. Clifton Nelson *vs.* Edward M. Hamlin.

Worcester.    September 28, 1926. — January 24, 1927.

Present: Rugg, C.J., Braley, Crosby, Carroll, & Wait, JJ.

*Contract,* What constitutes, In writing, Of employment. *Evidence,* Extrinsic affecting writings, Relevancy and materiality, Cumulative, Opinion. *Witness,* Cross-examination, Redirect examination. *Practice, Civil,* Conduct of trial, Exceptions. *Pleading, Civil,* Answer.

At the hearing by a judge without a jury of an action for breach of an alleged agreement to employ the plaintiff for two years, there was evidence that the defendant, then under a heavy contingent liability to a corporation which was operating other corporations, among them

one of whose plant the plaintiff was practical and technical man in charge, after preliminary oral conferences in which the plaintiff told him that he had an offer of employment at $1,000 per month from another corporation, wrote to the plaintiff on April 19: "I have had more or less interviews with you regarding your association with my organization as chief engineer and executive to the President of the various plants with which I am directly and indirectly connected. I hereby offer you the sum of . . . $12,000 per year for two . . . years." The plaintiff replied on April 21: "I hereby accept your offer to employ me for a peroid of two years at a salary of . . . $12,000 per year, outlined verbally to me Saturday, April 17, when in your office and confirmed by your letter of April 19th, it being understood that you wish me to stay in my present position with the . . . [company the plaintiff was managing] pending the working out of your present dealings or until conditions make it necessary to place me elsewhere." *Held,* that

(1) A finding by the judge that the letters constituted a valid contract in writing was warranted;

(2) The statement in the plaintiff's letter, "it being understood that you wish me to stay in my present position with the . . . [company the plaintiff was managing] pending the working out of your present dealings or until conditions make it necessary to place me elsewhere," did not as a matter of law render the acceptance qualified or conditional;

(3) For the purpose of correctly ascertaining the meaning of the language of the letter of acceptance as intended by the parties, and of determining whether or not the additional words in that letter were in the nature of a condition or were analogous to a request or a suggestion, the evidence of the previous conversation between the parties was admissible;

. (4) The contract between the plaintiff and the defendant began to run forthwith upon the plaintiff's acceptance of the defendant's offer;

(5) The act of the plaintiff in continuing, at the request of the defendant, in the employ of the corporation he was managing and the plaintiff's willingness to perform at all times during the period of the contract, constituted sufficient performance of the contract by the plaintiff.

· An exception to a refusal by a trial judge to strike out an answer by a witness which was not responsive to the question asked, but was material to an issue being tried, must be overruled.

It is within the judicial discretion of a trial judge to admit in evidence testimony by a witness corroborative of previous testimony given by him.

Admission in evidence of cumulative evidence upon a material issue on trial is within the judicial discretion of the trial judge.

The exclusion at the hearing of the action above described of a question asked of the defendant by his counsel as to his understanding of the word "agreement" as used in a phrase, "I have been constantly hoping that your affairs would improve so that I might have something to turn my hand to in accordance with our agreement," occurring in a letter by the plaintiff to the defendant within nine months after the

contract of employment was made, was *held* not to have been prejudicial to the defendant, and an exception to its exclusion was overruled.

At the trial of an action for a breach by an employer of a contract of employment for two years, where the answer is merely a general denial, the defendant may not rely upon a defence that the plaintiff after making the contract made a contract of employment with a third party.

The judge, who without a jury heard the action above described, found that the defendant wrote the letter of April 19, "intending thereby to offer to be responsible to the plaintiff to see that he was employed by some person or company for the next two years at a salary of $12,000 per year . . . [and] the plaintiff accepted the defendant's offer by his letter of April 21 . . . ." *Held*, that, the plaintiff's acceptance of the defendant's offer being unconditional and the employment of the plaintiff thereunder being in companies with which the defendant was connected, it was proper for the judge to refuse to rule either that the plaintiff's subsequent contracts with the company of which he was manager when he made the contract and with a company which afterwards got control of it through the defendant were inconsistent with the contract of employment by the defendant and relieved the defendant from any obligation of employment under that contract; or that, if the plaintiff, after his letter of acceptance to the defendant, "made a contract of employment with a third party, such contract was a rejection of the defendant's offer, unless the defendant knew and consented to the contract of employment with a third party."

CONTRACT upon an alleged agreement by the defendant to employ the plaintiff for two years at $12,000 per year. Writ dated February 21, 1923.

In the Superior Court, the action was heard by *Hammond*, J., without a jury. In a letter by the plaintiff to the defendant dated January 29, 1921, written when the plaintiff for some time had been out of employment and, the plaintiff testified, about a month after the defendant had reported to him that he was "just about broke" and had stated "I am fully aware of my obligations and just as soon as I can I will see that my agreement is carried out" was the following: "I have been constantly hoping that your affairs would improve so that I might have something to turn my hand to in accordance with our agreement. It seems that I must do something at once or else find someone to finance me for a long term. I hate to write such a blue letter to one who also has many troubles, but feel that possibly you have not fully realized the situation."

The defendant testified that previous to the letter he had

several conversations with the plaintiff relative to assisting him to procure employment, and that, before the letter of November 25, 1922, the plaintiff never had mentioned that he claimed to have an agreement of employment by the defendant. The defendant then was asked by his counsel, referring to the letter of January 29, 1921, "calling your attention to the words 'I have been consequently hoping that your affairs would improve so that I might have something to turn my hand to in accordance with our agreement,' what did you understand by his reference to the word 'agreement' . in there?" On objection by the plaintiff, subject to exception by the defendant, the question was excluded. The following questions and answers then occurred: "Q. Whether or not you, in some conversations with the plaintiff, at various times, had agreed to help him get employment? A. I did." The following question then was asked and, subject to exception by the defendant, was excluded: "Q. Whether or not it was to that agreement that you have just referred to, that in his letters where he used the word 'agreement' you understood he was referring to?"

Other material evidence and facts found by the judge are stated in the opinion. At the close of the evidence, the defendant asked for and the judge refused to grant the following rulings:

"(d) The plaintiff's subsequent contracts with the R. B. Phillips Company of May 28, 1920, and with the American Steam Gauge and Valve Manufacturing Company of July 21, 1920, were inconsistent with a contract of employment with the defendant under his letter of April 19, 1920, and relieved the defendant from any obligation of employment under said letter.

"1. Upon all the evidence judgment must be entered for the defendant.

"2. Upon all the evidence there was no contract of employment between the plaintiff and the defendant.

"3. The letter of the defendant to the plaintiff, dated April 19, 1920, and the letter of the plaintiff to the defendant dated April 21, 1920, do not make a contract of employment between the plaintiff and the defendant.

"4. If the defendant made the offer of employment as set forth in the letter dated April 19, 1920, for the purpose of aiding the plaintiff to secure employment, or a higher salary than he was getting with some party other than the defendant, and such purpose was understood by both parties, and it was further understood by both parties that the offer of employment set forth in the letter was not to be executed, the plaintiff cannot recover, even though he subsequently wrote a letter of acceptance.

"5. If it was mutually agreed between the plaintiff and the defendant that the offer contained in the letter of the defendant dated April 19, 1920, was never to be performed, and was for the purpose of aiding the plaintiff in his employment with some one other than the defendant, the plaintiff cannot enforce it.

"6. Parol evidence is admissible to show that the plaintiff and the defendant had mutually agreed that the contract which plaintiff is seeking to enforce, was never to be performed, but was a mere sham executed for the purpose of influencing the conduct of another party.

"7. Parol evidence is admissible to show that the plaintiff and the defendant had mutually agreed that the written offer of employment which the plaintiff alleges he accepted and is seeking to enforce was never to be performed, but was a mere sham executed for the purpose of aiding the plaintiff in securing employment elsewhere, or at a higher salary than he was receiving.

"8. The letter of acceptance of the plaintiff, dated April 21 [1920] materially varied the terms of the plaintiff's offer, and was not an acceptance, but a new offer which the defendant never accepted.

"9. The offer of the defendant in the letter of April 19, 1920, was an invitation to enter into negotiations for employment and was not an offer which could be converted into contract by acceptance.

"10. The acceptance of the defendant's offer by the plaintiff in his letter of April 21, 1920, containing terms varying from the offer, was a rejection of the offer.

"11. If the plaintiff, after his letter to the defendant of

April 21, 1920, made a contract of employment with a third party, such contract was a rejection of the defendant's offer, unless the defendant knew and consented to the contract of employment with a third party."

The following rulings asked for by the plaintiff were given by the judge:

"5. That the contract between the plaintiff and the defendant began to run forthwith upon the plaintiff's acceptance of the defendant's offer.

"6. That the act of the plaintiff in continuing in the employ of the R. B. Phillips Manufacturing Company at the request of the defendant, and the plaintiff's willingness to perform at all times during the period of the contract, constitute sufficient performance of said contract by the plaintiff, upon all the evidence."

There was a finding for the plaintiff in the sum of $18,080.05. The defendant alleged exceptions.

*J. E. McConnell,* (*T. H. Sullivan* with him,) for the defendant.

*E. Brown,* for the plaintiff.

CROSBY, J. This is an action to recover damages for the breach of an alleged written contract of employment. The case was heard by a judge of the Superior Court. All the evidence material to the questions raised by the bill of exceptions is reported. The trial judge made the following and other findings.

The plaintiff, a civil engineer by profession, after several years' experience with manufacturing concerns, was employed in Worcester by the R. B. Phillips Manufacturing Company (hereinafter called the Phillips Company), which was engaged in making screw machine products. Notwithstanding various changes in ownership of the company, the plaintiff continued to act as manager in charge of its manufacturing business from 1912 to the fall of 1920, when the plant was closed.

There was evidence that, in June, 1915, R. B. Phillips purchased the business with borrowed money. About six months later, because of financial difficulties, one Critchley, a former owner, was placed in control and thereafter con-

ducted the business until December, 1916, when Phillips regained control. The defendant first became associated with the company at this time. He was elected president and general manager, and continued so to act until May, 1919, when the American Steam Gauge and Valve Manufacturing Company of Boston (hereinafter called the American Company) acquired the plant of the Phillips Company, and that of another company, and became the operator of the Phillips Company, which retained its trade name.

In the spring of the year 1920, while the plaintiff was employed as manager of the American Company's plant, he received a salary of $500 a month. In March of the same year he was offered $1,000 a month to act as general manager of the Hobbs Manufacturing Company, also located in Worcester. While he was considering this offer, on Saturday afternoon April 17, 1920, he called upon the defendant, who was then the treasurer of the American Company, and informed him of the offer and told him that he felt he ought to accept it. The parties then had a further conversation about the matter, and on Monday, April 19, 1920, the defendant wrote to the plaintiff the following letter: "Dear Sir: I have had more or less interviews with you regarding your association with my organization as chief engineer and executive to the President of the various plants with which I am directly and indirectly connected. I hereby offer you the sum of twelve thousand dollars ($12,000) per year for two (2) years." To this letter the plaintiff replied on April 21, as follows: "Dear Ed: I hereby accept your offer to employ me for a period of two years at a salary of twelve thousand dollars ($12,000) per year, outlined verbally to me Saturday, April 17, when in your office and confirmed by your letter of April 19th, it being understood that you wish me to stay in my present position with the Phillips Company pending the working out of your present dealings or until conditions make it necessary to place me elsewhere. I have therefore written Mr. Pike as per enclosed copy and trust everything will work out nicely."

The judge found that it was fair to infer that the plaintiff "was recognized by the defendant to be a valuable man to

the company. He had been the practical manufacturing head of the business for seven or eight years during which time the company had been prosperous. He was then receiving a salary of $500 per month. In view of the future prospects of the company's business, its heavy current indebtedness to the banks, with whom the defendant was associated, the defendant's contingent personal responsibility for the company's debts through the pledge of his own property as collateral therefor and the chance that the banks might perhaps find themselves left with the business upon their hands, the possible loss of the practical operating head of the Worcester plant at that particular juncture might well appear a serious matter."

Subsequently to April 19, 1920, the defendant had informed the plaintiff by letter that the American Company had passed into the control of one Tompers and of one Jonas of New York. The plaintiff thereafter agreed to work for the new owners at a salary of $1,000 a month. They took possession of the company in June, 1920, and closed the plant about November 1, following.

The judge admitted, subject to the defendant's exception, the conversation between the parties on April 17, "to explain the sense in which they used the words contained in the letters of April 19 and April 21, 1920 . . . ." The judge examined and considered the events preceding the circumstances of writing said letters, as well as the subsequent conduct of the parties, and made the following findings: "The defendant in April, 1920, was under a heavy contingent personal responsibility for current indebtedness of the American Steam Gauge and Valve Manufacturing Company, falling due in the near future. The defendant was aware that the business of that company was then on the decline, that there had been large over-production during the war, and that the prospects for the future were doubtful to say the least and he had been informed by the plaintiff that the Worcester plant, of which the plaintiff was the practical and technical man in charge, required a large outlay of money to make good wear and tear upon its equipment which was not adequate to manufacture successfully upon a competitive

basis.   He knew that the plaintiff was a valuable man for
the company to retain in its employ especially at that par-
ticular time.   Realizing all this and knowing that the plain-
tiff had been offered and was considering accepting a position
with another company at twice his then salary, the defendant,
in order that the plaintiff might not be tempted to accept this
offer and in order to induce him to decline it and to continue
in the employ of the Worcester company, wrote the letter of
April 19, 1920, intending thereby to offer to be responsible
to the plaintiff to see that he was employed by some person
or company for the next two years at a salary of $12,000 per
year, provided that the plaintiff would promise to remain
with the American Steam Gauge and Valve Manufacturing
Company and would decline the offer from the Hobbs Manu-
facturing Company.   The plaintiff accepted the defendant's
offer by his letter of April 21, 1920, and performed his promise
by declining the offered position with the Hobbs Company
and by remaining in the employ of the American Steam Gauge
and Valve Manufacturing Company until its Worcester plant
was shut down and also by holding himself in readiness to
accept such employment as should be offered to him.   I am
unable to find that the plaintiff by reasonable diligence could
have procured other employment of the same general char-
acter fairly adapted to his abilities during that part of the
two years' period covered by the contract after January 1,
1921.   I find that the defendant's offer was not procured by
fraud and misrepresentation upon the part of the plaintiff as
alleged in the defendant's amended answer."   The judge
found generally for the plaintiff and assessed damages in the
sum of $18,080.05.

The finding that the letters of April 19 and April 21, 1920,
constituted a valid contract in writing was warranted.   The
acceptance was in accordance with the terms of the offer.
*Lawrence* v. *Rosenberg,* 238 Mass. 138, 141.   The statement
in the plaintiff's letter, "it being understood that you wish
me to stay in my present position with the Phillips Company
pending the working out of your present dealings or until
conditions make it necessary to place me elsewhere," does not
render the acceptance qualified or conditional.   By the use

of the words "you wish" the judge could have found that the plaintiff did not intend them to be a condition of the acceptance and that the defendant did not so construe them.

"Frequently an offeree while making a positive acceptance of the offer, adds as a request or suggestion that some addition or modification be made. So long as it is clear that the meaning of the acceptance is positively and unequivocally to accept the offer whether such request is granted or not, a contract is formed." Williston on Contracts, § 79. *Culton* v. *Gilchrist,* 92 Iowa, 718, 721. *Phillips* v. *Moor,* 71 Maine, 78. *Turner* v. *McCormick,* 56 W. Va. 161. *Purrington* v. *Grimm,* 83 Vt. 466, 469. *Robinson* v. *Western Union Telegraph Co.* 169 Mich. 503, 514. *Simpson* v. *Hughes,* 66 L. J. Ch. (N. S.) 143; *S. C.* 66 L. J. Ch. (N. S.) 334. *Stevenson, Jaques, & Co.* v. *McLean,* 5 Q. B. D. 346, 350. It follows that the defendant's first, second, and third requests were rightly denied.

It is well settled that a written agreement unambiguous in its terms, in the absence of fraud or mistake, is conclusively presumed to express the whole intent of the parties, and cannot be modified or affected by extrinsic evidence. When, however, "the meaning of the written instrument is not plain, or becomes doubtful in its application to the particular transaction, . . . extraneous evidence is admissible to explain the significance of terms used or to show the relations and methods of the parties in the light of which their written words are to be interpreted." *Snider* v. *Deban,* 249 Mass. 59, 61.

We are of opinion that, for the purpose of correctly ascertaining the meaning of the language of the letter of acceptance as intended by the parties, and of determining whether or not the additional words in that letter were in the nature of a condition or were analogous to a request or a suggestion, the evidence of the previous conversation between the parties was admissible. It cannot be said that the language of the letter was so clear, definite and comprehensive as to leave no room for construction. The extrinsic evidence was admitted to show the real intention of the parties as expressed in the letter. *W. R. Grace Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251. The exception to the admission

of this evidence and the exception to the refusal of the judge to strike it out must be overruled.

On cross-examination the plaintiff was asked: "When Tompers and the New York parties, or Tompers and Jonas, came to Worcester and told you what the situation was, that they were in control of that plant, did you believe them or not? Yes or No." He replied: "In a sense." The judge directed the plaintiff to answer the question, but ruled that he was not confined to answering yes or no. The plaintiff then said: "I presume that they had reasons for being there, but any actions at that time were not sincere enough for me to absolutely believe anybody." The defendant excepted to the refusal of the judge to order the answer stricken out as irresponsive. It is a legitimate inference that the plaintiff's state of mind was in issue; and assuming that the answer was irresponsive, as it was material to the subject then being inquired about, the judge was not bound to strike it out. *Lewis* v. *Coupe*, 200 Mass. 182, 187, 188.

On redirect examination the plaintiff was asked: "You stated that you were certain you mailed the letter of acceptance April 21, 1920?" The answer was in the affirmative. He was then permitted, subject to the defendant's exception, to state reasons why he remembered mailing the letter on the date named. This evidence was admissible, within the sound judicial discretion of the judge, as corroborative of the truth of his previous testimony. *Commonwealth* v. *Bishop*, 165 Mass. 148, 152. *Commonwealth* v. *Sacco*, 255 Mass. 369, 441.

The admission of the conversations between the plaintiff and one Pike, an officer of the Hobbs Manufacturing Company, testified to by Pike, was not erroneous. The good faith of the offer of the defendant was a material issue at the trial. The plaintiff had previously testified that he had received the offer. The testimony of Pike was cumulative evidence and its admission was within the discretion of the judge. Cumulative evidence may be received in the discretion of the trial judge upon a point admitted by the adverse party. *Dorr* v. *Tremont National Bank*, 128 Mass. 349, 360. *Brown* v. *Brown*, 208 Mass. 290, 291.

The exception to the exclusion of the defendant's testimony as to his understanding of the word "agreement" in a letter to him from the plaintiff, dated January 29, 1921, must be overruled. The defendant's opinion respecting the meaning of this word would be immaterial upon any issue involved, especially as no formal offer of proof was made as to what the answer would be. In any event the exclusion did not constitute prejudicial error.

The judge rightly ruled in accordance with the plaintiff's fifth and sixth requests. The defendant's request "d" could not properly have been given. The defendant's eleventh request was that "If the plaintiff, after his letter to the defendant of April 21, 1920, made a contract of employment with a third party, such contract was a rejection of the defendant's offer, unless the defendant knew and consented to the contract of employment with a third party." The defendant did not in his answer set up the contract with a third party as a defence to the action. Although the plaintiff made no objection to the admission of certain evidence on the ground that this defence had not been pleaded, it is plain that such defence was not open. As it was not pleaded it cannot be relied on. See *Jones* v. *Revere Preserving Co.* 247 Mass. 225, 227, 228. Besides, the trial judge could have found that the plaintiff's letter of April 21, 1920, constituted an unconditional acceptance of the defendant's offer; therefore, it is obvious that the defendant was not as matter of law entitled to a ruling that the plaintiff's contract of employment with a third party constituted "a rejection of the defendant's offer, unless the defendant knew and consented to the contract of employment with a third party." The judge found that the defendant wrote the letter of April 19, 1920, "intending thereby to offer to be responsible to the plaintiff to see that he was employed by some person or company for the next two years at a salary of $12,000 per year . . . [and] the plaintiff accepted the defendant's offer by his letter of April 21, 1920 . . . ." It is plain that none of the defendant's exceptions can be sustained.

The letters of April 19 and 21, 1920, constituted a contract between the parties, the consideration to the defendant

being that the plaintiff should remain in the employ of the Phillips Company and that he would decline the offer of the Hobbs Manufacturing Company; the consideration to the plaintiff being that the defendant agreed the plaintiff would be paid a salary of $12,000 for a period of two years. It could have been found that the plaintiff remained in the employ of the Phillips Company until the plant was closed, and received from that company the sum of $7,133, from the date of his contract to January 1, 1921; and that after that date he could not by the exercise of reasonable diligence obtain other employment during the term of the contract.

*Exceptions overruled.*