COMMONWEALTH *vs.* EDWARD P. SIMPSON.

SAME *vs.* SAME.

Middlesex.     March 7, 1938. — March 28, 1938.

Present: RUGG, C.J., FIELD, LUMMUS, DOLAN, & COX, JJ.

*Evidence*, Relevancy, Competency, Of consciousness of guilt, Dying declaration, Discretionary control of evidence, Preliminary examination as to admissibility, Of motive, Admissions. *Practice, Criminal*, Exceptions: whether error harmful, general exception; Discretionary control of evidence; Preliminary examination as to admissibility of evidence; Appeal with assignments of error. *Witness*, Refreshment of recollection, Credibility.

At a trial for murder, on a witness's testifying that the defendant "had something in his hand" and his being asked what it was, the answer, "I couldn't tell you what he had, but it was shaped like a revolver," was not unresponsive and there was no prejudice to the defendant in allowing it to stand.

Testimony at the trial of an indictment that the witness had told a police officer that the defendant was "holding up" another officer was not prejudicial to the defendant in view of other evidence, admitted without objection by the defendant and also elicited by him in cross-examination, that such "holdup" occurred.

It was in the discretion of the judge at a trial for murder to allow the district attorney to put leading questions to witnesses for the Commonwealth.

A question to a witness, whether he could tell that one of two persons was talking to the other, was competent.

A trial judge was not required to strike out an answer of a witness which, though not categorical, was in the nature of a repetition of what he had previously testified without objection.

Testimony of a witness as to the ownership of certain property, not shown by cross-examination or otherwise not to have been based on his own knowledge, was not objectionable as being his "opinion" or "conclusion of fact:"

At a trial for murder by shooting, testimony by a witness that just after he heard shots near his house a man (identified as the defendant by other evidence) appeared in his driveway and said, in answer to an inquiry as to what the trouble was "over there," "Shut your . . . mouth," was admissible as evidence of the defendant's consciousness of guilt.

In an examination preliminary to the admission of testimony as to a dying declaration, the witness's use of a written memorandum to refresh his memory concerning the questions to and answers by the dying person was proper.

The defendant at the trial of an indictment was not harmed by the admission of hearsay evidence of a fact if he admitted that fact.

At a trial for murder of police officers who were shot by the defendant while one was following an automobile driven by the defendant and the other was riding in it by the defendant's compulsion, evidence that the automobile had been stolen and bore false registration plates; that the defendant was "wanted" for several serious crimes; that he was a fugitive from justice; and that he had escaped from jail, was admissible to prove a motive for the murders.

At a criminal trial, there was no error in permitting a witness to testify that he knew the defendant by another name specified as his alias in the indictment.

There was no error in admitting in evidence at a criminal trial, solely on the issue of the defendant's credibility as a witness, records of convictions of a man of another name where the defendant admitted that he was the person described in the records and that they were true.

Evidence of motive is competent but not an essential part of the Commonwealth's case at a trial for murder.

The admission in evidence at a murder trial of articles related to the crime, alleged to have been found several hours after the crime in an automobile used by the defendant at the time it was committed, was not error; whether the articles were in the automobile while it was in the defendant's possession was for the jury on the evidence.

At a trial for murder of a police officer, it was not an abuse of discretion nor prejudicial to the defendant to admit in evidence clothing and personal effects of the deceased.

If a defendant charged with murder of a police officer remarked during the trial that it was "too bad" he "didn't knock . . . off, too," another police officer who had participated in the events leading up to the murder and who was testifying for the Commonwealth, that remark was evidence of an admission by the defendant.

No question of law was raised by a general exception to the whole charge at a murder trial nor by an assignment of error based on that exception.

Upon appeal following a conviction of murder, an assignment of error is of no effect unless based on an exception.


Two INDICTMENTS, found and returned in the Superior Court on August 30, 1937, and September 14, 1937, respectively.

The indictments were tried together before *Swift*, J. The defendant was found guilty on each indictment and filed appeals with assignments of error.

*J. M. Boyle*, (*H. Aronofsky* with him,) for the defendant.

*W. J. McCluskey*, Assistant District Attorney, for the Commonwealth.

Cox, J.   The defendant was found guilty in the first degree of the murders of Henry G. Bell and Lawrence E. Murphy, both police officers of the city of Newton.   Each indictment alleged that the defendant was otherwise called James R. Swartz.   Sentence of death was imposed and stay of execution was ordered.   St. 1935, c. 437, § 3.   The defendant testified in his own behalf and admitted that he shot both officers, contending that he did so in self-defence.

There was evidence that on the evening of August 21, 1937, the defendant, while operating an automobile which had been stolen, invited a girl named Frada to ride.   At her request, he permitted her to drive and while she was doing so they were stopped by two police officers, one of whom was Bell, the deceased.   After some conversation, the other officer, whose name was Whelan, went away, leaving Bell standing beside the automobile, which was parked at the curb.   At the direction of the defendant, the Frada girl alighted but remained near-by.   Officer Whelan returned within a short time with a civilian, who looked at the defendant as he was sitting in the automobile.   After Whelan and the civilian had departed, the defendant got out of the automobile, came around its rear with a gun in his hand to where Bell was standing and said to him, "stick them up."   Bell put up both hands, and the defendant took the officer's revolver.   Bell then stepped into the automobile with his hands up, followed by the defendant.   At about that time, the Officer Murphy came riding up on his motorcycle and stopped on the left of the automobile.   He inquired as to what was going on but received no reply.   The Frada girl, who was standing on the sidewalk beside the automobile, went around its rear to where Murphy was standing, said something to him, and returned to the sidewalk.   The automobile started, with Murphy following on the motorcycle.   After travelling some distance, the automobile stopped on Watertown Street.   Murphy, who had been following, left his motorcycle and, as he was approaching from the rear, was shot by the defendant, who was inside the automobile.   Murphy slumped to the ground.   The defendant shot Bell and tried to push his body from the

automobile but was unable to do so. He alighted and as he ran down the street Murphy, in a recumbent position, fired several shots. The defendant was seen to hesitate for a while and then continue on. A bullet which was fired from Murphy's revolver was removed later from the defendant's body. Bell's body was found lying over the wheel of the automobile with his revolver, holster and belt lying on the front seat. No bullets had been fired from his revolver. The defendant testified that as he was sitting in the automobile he was shot from behind by Murphy without any warning; that he then shot Murphy with a revolver which he had had in the automobile all that day and then shot Bell while engaged in a struggle with him. Further recital of the evidence is unnecessary. It relates in part to the defendant's movements after the shooting and to alleged admissions by him. From it the jury could have found a consciousness of guilt on his part and a course of conduct which was inconsistent with his claim of self-defence. Some of this evidence, however, is dealt with in the consideration of the assignments of errors, which follows.

1. The Frada girl testified that, while Bell was standing beside the automobile, the defendant opened the compartment in the front, took out a case and put it between his legs; that it was shaped like a gun; that she grabbed his wrist and said, "Drop that gun"; that as she was standing by the rear of the automobile, "all of a sudden Simpson got out of the car and stuck the officer [Bell] up." She was asked if she saw anything in the defendant's hand and replied, "Well, when I left the car he had something in his hand." She was then asked, "What did he have?" and her reply was, "Well, I couldn't tell you what he had, but it was shaped like a revolver." Thereupon the defendant objected without stating any reason and excepted to the ruling that "It may stand."* No request was made to

---

* In his brief, the defendant contended that "This answer was not responsive to the question but was a characterization by the witness and should have been excluded by the judge. Allowing this statement to stand was prejudicial to the rights of the defendant." — REPORTER.

strike out the answer. There was evidence from other witnesses that the defendant had a gun in his hand when he "held up" the officer. The evidence objected to was competent for its apparent purpose. It was material to the subject then being inquired about and in a broad sense the answer was responsive. It cannot be said that the ruling of the trial judge was wrong. *Commonwealth* v. *Mercier*, 257 Mass. 353, 370, 371. *Nelson* v. *Hamlin*, 258 Mass. 331, 341.

2, 3. The Frada girl testified that when the Officer Murphy first drove up to the automobile in which Bell and the defendant were seated, he asked Bell where he was going and Bell made no reply; that as soon as the car started to move Murphy asked her what was the matter and she replied, "The man in that car is holding up an officer"; and that "So the officer went after that car." The defendant excepted to the refusal of the judge to strike out this conversation. During the cross-examination of the Frada girl, the defendant renewed his motion to strike out this conversation for the reason that it appeared from her testimony that the conversation took place after the automobile had started and was proceeding down the street. The motion was denied and the defendant excepted. The error assigned is that this conversation between Murphy and the Frada girl was not in the presence or hearing of the defendant and was highly prejudicial to his rights. There was testimony, however, from another witness, who was on the piazza of her house, opposite which the automobile was parked, that Murphy drove his motorcycle "right up to the car on the left-hand side and stopped"; that she "heard the words, 'Hey! What's going on here?' Then the girl left from where she was and went around the car again, around the back of the car to the officer on the motorcycle. I didn't hear nothing that she said, but she seemed to be touching the officer. . . . She lifted her hand and she came right back to where she was standing before; and the two cars — I mean the car started towards Watertown and the motorcycle behind it. . . . Followed on." This witness testified on direct examination that she saw the

defendant get out of the automobile, go around its back and right up to Bell; that he pointed one hand at Bell and with "the other hand he seemed to be grabbing something from the officer. . . . He just pointed one hand at the officer . . . and grabbed. . . . With the other hand . . . Then . . . the officer held up his hands." The defendant brought out from this witness on cross-examination that she told people who came upon the scene after the automobile and motorcycle had left that "an officer just got held up"; that she told the same thing to an officer who arrived shortly after; that she knew there was a "holdup" because she saw it; and that the Frada girl told her there was a "holdup." Other witnesses testified that they saw the defendant, with a gun in his hand, "hold up" Bell. Another witness for the Commonwealth testified on cross-examination without objection that, while the defendant was going around the automobile toward Bell, he "heard a lady yelling, 'He's got a gun.' She was up on the piazza. She saw it all, I think." The jury could have found that the alleged remark of the Frada girl to Murphy was made in the presence and hearing of the defendant. The fact, if it is a fact, that it could not have been so found on the testimony of the Frada girl is not controlling. *Boston Food Products Co.* v. *Wilson & Co.* 245 Mass. 550, 560. A remark heard by a party and which is an occurrence closely connected with and perhaps affecting conduct, the nature of which is in issue, may be put in evidence as a part of matter under investigation. *Hartnett* v. *McMahan,* 168 Mass. 3. Ordinarily in the trial of a criminal case, the Commonwealth may introduce evidence tending to prove the circumstances under which the crime charged was committed. It may show the whole transaction of which the crime was a part. "Evidence of the attendant circumstances may aid the jury in reaching a verdict by giving them the complete picture. *Hartnett* v. *McMahan,* 168 Mass. 3, 4." *Commonwealth* v. *Durkin,* 257 Mass. 426. Other evidence, similar in character to the remark objected to, was not only introduced by the Commonwealth without objection but also brought out in cross-examination of government wit-

nesses other than the Frada girl. From this it would appear that the defendant was not prejudiced by the admission of the remark. *Morrison* v. *Lawrence,* 186 Mass. 456, 458. *Chandler* v. *Prince,* 217 Mass. 451, 459. If the defendant heard and understood the remark, it was for the jury to consider whether it was made by such a person and under such circumstances as naturally called for a reply, and also to consider what inference, if any, would be drawn from his failure to reply, if in fact he made no reply. *Commonwealth* v. *Kenney,* 12 Met. 235. *Commonwealth* v. *Sliney,* 126 Mass. 49. *Commonwealth* v. *Brailey,* 134 Mass. 527. There was no reversible error.

4, 5. The defendant excepted to the allowance of questions to a witness for the Commonwealth on the ground that they were leading. We do not so consider them but, if they were, it was within the discretion of the trial judge to allow them and there is nothing in the record to show an abuse of that discretion. *Commonwealth* v. *Meserve,* 154 Mass. 64, 68. *Commonwealth* v. *Dorr,* 216 Mass. 314, 318. *Commonwealth* v. *Knight,* 257 Mass. 421, 424.

6. The question put to the witness Henri, to which the defendant objected, "Could you tell whether or not she [Frada] was talking to him [Murphy]," was competent. Henri had testified that he saw the defendant with a gun in his hand "hold up" Bell; that he saw Murphy come up on the motorcycle; and that the Frada girl was present. No objection was made to the answer to the question, which had probative value. *Commonwealth* v. *Mercier,* 257 Mass. 353, 371.

7. In the cross-examination of the witness Henri, he was asked about a conversation with the Frada girl and if he had asked her what had happened, to which he replied that he had. The question then was put, "And the reason you asked her was because you didn't know what happened; isn't that the truth?" and the witness answered, "Well, I knew that he held up the policeman, but I didn't know what happened before, or anything like that, and I just wanted to know." After another question and answer the defendant appears to have asked that the answer quoted be

struck out, and excepted to the refusal of the judge to grant his request. The answer was in the nature of a repetition of what the witness had previously testified without objection, and although the answer was not categorical, yet the judge was not required to strike it out. *Commonwealth* v. *Mercier,* 257 Mass. 353. *Nelson* v. *Hamlin,* 258 Mass. 331, 341. See *Commonwealth* v. *Min Sing,* 202 Mass. 121, 130.

8. A witness who drove Bell to the hospital in the automobile in question shortly after the shooting was asked what he saw in it when he got to the hospital. His answer was, "I saw Bell's gun and belt on the front seat." There was no error in the refusal of the trial judge to strike out this answer. The assignment of error is that the "expression of opinion of the witness that it was Bell's gun . . . was a conclusion of fact . . . ." The transcript of testimony does not bear this out. The witness was not cross-examined and nowhere does it appear that the answer was not based upon his knowledge. A police officer testified that he found Bell's holster, belt and revolver on the front seat of the automobile, after it had been driven to the Newton police station.

9, 10. A witness who lived in a long building which was located near the scene of the shooting but back some distance from Watertown Street, and also back of some bushes, testified that he heard several shots and that when he went to his window he saw a man come through from the bushes and into the witness's driveway, "right by my window"; that he asked the man, "What happens to be the trouble over there?"; and that the man replied, "Shut your . . . mouth." In a colloquy which followed, the defendant's counsel asked that a remark of the district attorney be struck out. The judge inquired of counsel if he was objecting to the evidence and counsel replied, "My objection is not to the evidence but to the remark made by the district attorney." The judge then stated that he understood there was an objection to the evidence, to which counsel replied, "No, I object to the remark of the district attorney." The remark of the district attorney was with-

drawn. Thereupon the question was put again to which the defendant excepted and the same answer was received. The witness had testified that the man was running and had his arm up as if he were in pain and that he had on a white shirt and panama hat. After he had testified in cross-examination that he did not know the man who made the remark and had never seen him since, the defendant asked the judge to strike out the testimony of this witness and excepted to his refusal to do so. The defendant admitted that after the shooting he ran down the street about fifty or sixty feet, then through a field and through the bushes to the long building and around its corner. From this testimony and that of other witnesses which described the defendant's dress, appearance and movements, the inference was warranted that it was the defendant who made the remark objected to. The jury had a right to consider this alleged remark of the defendant, especially in view of his contention that he shot the officers in self-defence, as some evidence of his consciousness of guilt. *Commonwealth v. Graham,* 279 Mass. 466.

11. This assignment of error was waived.

12. A captain of police testified to an alleged dying declaration of Murphy. During the preliminary examination in the absence of the jury, the defendant went at length into what the captain did by way of writing down Murphy's answers to questions which were put to him. The captain was then asked what was the first question he asked Murphy, and replied, "I haven't got the writing. I could give it to you from the file." A colloquy ensued and the judge ruled that the witness had a right to refresh his memory if he wished to by the use of any memorandum, and the defendant excepted. There were twenty-nine questions and answers in the writing, which it seems from the transcript of testimony the captain was permitted to use during his examination as to the questions and answers. Its use was proper. *Commonwealth v. Haney,* 127 Mass. 455, 458. *Commonwealth v. McDermott,* 255 Mass. 575, 580.

13. The trial judge admitted an alleged dying declaration of Murphy, leaving it to the jury with ample instruc-

tions, to which no exception was taken, to determine, upon a consideration of all the evidence, whether or not it was one. The defendant excepted generally to its admission before testimony relating to it was given to the jury. There was evidence which warranted the submission of the declaration to the jury. *Commonwealth* v. *Vona,* 250 Mass. 509. The questions which were put to Murphy, together with his answers, were written by a police captain. The writing was not admitted in evidence. *Commonwealth* v. *Haney,* 127 Mass. 455, 458. No specific objection was made to any of the questions and answers as they were testified to either before the trial judge or thereafter to the jury. There was no error in admitting the alleged declaration. *Commonwealth* v. *Casey,* 11 Cush. 417. *Commonwealth* v. *Haney,* 127 Mass. 455. The defendant now contends that some of the questions and answers were incompetent and that some of the answers were not responsive. An examination of them discloses no error. The defendant was not harmed by the answer that the Frada girl said the defendant had a gun. The defendant admitted that he had a gun in the automobile; that it had been there all day; and that he shot both officers with it. See *Commonwealth* v. *McDonald,* 264 Mass. 324, 336.

14, 15. The Commonwealth contended that the automobile in question had been stolen and was being operated by the defendant with false number plates which had been pieced together so as to make the number 445401. There was testimony that when the automobile was stopped by the officers the defendant produced an alleged registration slip which purported to show that the owner was one James F. Ross of Beacon Street, Boston; that the defendant told the officers his name was Francis Ross and that he was a brother of the owner; and that he said to one of the officers, "Why don't you take some money and let us go?" The defendant testified that the automobile belonged to James Ross. A witness named Rachnis testified that he identified the automobile, which was then at the Newton police station, as his; that his registration number was 45079; and that the automobile had been stolen on June 28. The defendant

excepted to the testimony of Rachnis that the automobile had been stolen, on the ground that it related to a collateral issue. This evidence was competent. The jury could find that it had a direct relation in the chain of circumstances which led to the commission of the crimes, *Commonwealth v. Durkin*, 257 Mass. 426, and, when considered with the other evidence in the case, had probative value as to the motive which may have prompted their commission. *Commonwealth* v. *Feci*, 235 Mass. 562, 567. *Commonwealth* v. *Gettigan*, 252 Mass. 450, 458.

16. There was evidence that, after the shooting, the defendant took another motor vehicle, forcing, at the point of his revolver, its occupant to leave; that he drove to the home of a friend where he abandoned the motor vehicle and gave his revolver to his friend; that after his wound had been dressed he was removed to the house of one Addison where he remained several days. Addison testified that he knew the defendant during that time by the name of Swartz. To this the defendant excepted. The indictments described the defendant as being otherwise known as Swartz. The defendant admitted that he was known as Edward Swartz and James Swartz. During the trial certain records of convictions of crimes by Edward Swartz and James Swartz were introduced in evidence, the defendant admitting that he was the person so described in the records and that they were true. The judge limited the effect, if any, of these records to the credibility of the defendant as a witness. There was no error. *Commonwealth* v. *Meserve*, 154 Mass. 64, 69.

Addison testified further that, while the defendant was at the house, he saw his picture in a newspaper and that the defendant said it was his picture; that he asked the defendant "Well, what did you want to shoot the cops for?" to which the defendant replied, " 'Well, I couldn't take the rap.' I said, 'What do you mean?' He said, 'Well, the automobile was stolen first' . . . he said it was a stolen automobile . . . the automobile was hot. . . . He said, 'Well, that isn't all,' and he told me he was wanted for breaking out of Charles Street jail . . . and for the wool

robbery, and for a stick-up in Nantasket. . . . On the wool stick-up down in Providence . . . I says, 'I think you would have been better off if you took a chance instead of shooting the cops.' . . . He said, 'Well, I don't know; I would have wound up with life, anyway, that way.'" The defendant objected to this evidence and excepted to its admission. The jury was cautioned by the trial judge that the witness was giving a conversation between himself and the defendant and that it was no evidence of the truth of what was alleged.

Motive is not an essential element of crime, and the Commonwealth is not required to prove it, but evidence tending to show a motive is always competent, because, if clearly shown, it may help to confirm the conclusion reached from all the other evidence that the defendant is guilty of the crime charged. *Commonwealth* v. *Feci*, 235 Mass. 562, 566–567, and cases cited. Even if it be shown that a defendant charged with the commission of a crime has actually committed other offences, the commission of which has a tendency to establish the act in controversy, yet such evidence is admissible. *Commonwealth* v. *Feci*, 235 Mass. 562, 567. *Commonwealth* v. *Gettigan*, 252 Mass. 450, 458. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 314. *Commonwealth* v. *Mercier*, 257 Mass. 353, 368. There is nothing inconsistent with this in the case of *Commonwealth* v. *Bishop*, 296 Mass. 459, and there was no error in admitting the evidence of the witness Addison.

17. This assignment of error was waived.

18. This assignment of error relates to the admission in evidence of certain articles which, it was testified, were found in the automobile in which Bell was shot, and also of clothing and personal effects of the two deceased officers which were taken from the hospital on August 23. The objection to the admission of the articles alleged to have been found in the automobile was that they were not found until five o'clock of the morning after the shooting, which took place at about half past eleven in the evening. There was evidence that the automobile was driven to the hospital with Bell in it shortly after the shooting, and was brought

to the garage at the Newton police station by a police sergeant; that at five o'clock in the morning the articles which were admitted in evidence were removed. The defendant admitted that he had had the automobile during all of the previous day. The revolver with which the fatal shots were fired was a Remington automatic, caliber 380. Some of the articles, including nine automatic loaded cartridges, caliber 380, were found in the front compartment, from which, there was evidence, the defendant took the alleged registration slip and also the case resembling a gun. Other articles were found in the rear compartment and on the rear seat. Without a recital of further evidence, it was for the jury to say whether all of the articles were in the automobile while it was in the possession and control of the defendant, and there was no error in admitting them in evidence.

The defendant inquired in detail of witnesses as to the kind and color of the uniforms which were worn by the deceased, and to meet this evidence, if for no other reasons, the clothing and personal effects were admissible. The defendant has not shown that he was harmed by their admission. Much must be left to the sound discretion of the trial judge as to the admission of evidence of this character. It is quite the common practice in this Commonwealth to admit it, unless for some special reason it appears that by so doing the result would be to prejudice and mislead the jury. In the case at bar there is nothing in the record to suggest any such likelihood. It was open to the Commonwealth, as it developed its case, to establish the fact that the deceased were or at least appeared to be officers of the law, and that the defendant could have recognized them as such. Some of the articles which were admitted were inconsequential. The defendant has not shown that he was harmed. See *Commonwealth* v. *Abbott*, 130 Mass. 472. *Commonwealth* v. *McDonald*, 264 Mass. 324.

19. The defendant testified, on direct examination, that when Officer Whelan and the civilian came to the automobile they gave him "quite a looking over, and the fellow they had with them kept shifting back and forth to look

at me from different directions, like. So I got kind of burned up, and I asked Officer Whelan, 'What's the story here?' But he didn't answer me. And I said to the man, I said, 'Do you know me?' And he said, 'No.' At the same time he shook his head to Officer Whelan." Upon cross-examination he testified that he knew the civilian was trying to identify him for something but that he did not know for what, and that he knew of no reason why anybody should try to identify him. He also testified, on direct examination, that he never saw the witness Addison while he was at his house, and that he never had any conversation with him. On cross-examination he was asked if, as a matter of fact, on the night of the killing, he was not a fugitive from justice, and answered, over his objection and exception, that he was; and also, subject to his objection and exception, that he had escaped from the Charles Street jail. There was no error. The state of mind of the defendant was a material issue. It was open to the Commonwealth to show, if it could, a motive for the commission of the crimes and, as already pointed out in the discussion of the sixteenth assignment of error, if it be shown that a defendant charged with the commission of a crime has actually committed other offences, the commission of which has a tendency to establish the act in controversy, such evidence is admissible. *Commonwealth* v. *Feci*, 235 Mass. 562, 567. *Commonwealth* v. *Gettigan*, 252 Mass. 450. *Commonwealth* v. *Madeiros*, 255 Mass. 304. *Commonwealth* v. *Mercier*, 257 Mass. 353, 368.

The defendant was asked on cross-examination if, during the trial, he made any remark concerning officer Whelan after the officer left the witness stand and was passing the cage where the defendant was sitting, and he answered that he did not. The defendant excepted to this, but it does not appear that he was harmed. He was then asked, "Didn't you say these words, whether directed at him or anybody or simply talking to yourself out loud, 'Too bad I didn't knock that bastard off, too'?" and his answer was, "That is a lie." The defendant excepted to the question. The Commonwealth called a witness in rebuttal who testi-

fied that while officer Whelan was testifying he heard the defendant say the precise words which were attributed to him in the question put to him on cross-examination. The inquiry on cross-examination was a proper one, and any question as to its relevancy was settled by the answer of the witness in rebuttal. It was for the jury to determine, if it found that the remark was made, whether it was spoken of the witness Whelan. If the jury so found, it could further consider whether it was a remark in the nature of an admission or one not likely to be made by an innocent man. *Commonwealth* v. *Madeiros,* 255 Mass. 304, 313.

20, 21, 22. The remaining assignments of error relate to an alleged exception to the judge's charge, the refusal to give certain requests and an allegation that the entire evidence failed to show that the crime or crimes, as alleged, were committed with deliberate, premeditated malice aforethought. The only exception upon which these assignments as to error in the judge's charge can be based is found at the close of the judge's charge, where it appears that the defendant's counsel said, "I haven't any further instructions to suggest, but I think I ought to have an exception to the entire charge," and the judge remarked that "The stenographer will note that counsel for the defendant takes an exception to the entire charge." At the argument, the defendant's counsel admitted that no specific exception was taken to the charge. There were no exceptions relating to the last assignments of error. It has long been the law that a general exception to a judge's charge raises no question of law. *Curry* v. *Porter,* 125 Mass. 94. *Commonwealth* v. *Duncan,* 250 Mass. 405. *Commonwealth* v. *McDonald,* 264 Mass. 324, 335, 336, 337. In the case of *Commonwealth* v. *McDonald,* 264 Mass. 324, the provisions of G. L. (Ter. Ed.) c. 278, §§ 33A–33G, were considered. It is under these provisions that all trials in murder indictments must be held. In that case it was said (pages 335, 336, 337): "The exception to the entire charge and the assignment of error based thereon are of no avail. . . . an assignment of errors not based upon an exception cannot be treated as rightly presented to the full court. . . . It

is assumed that in appropriate instances this court has and will exercise the power to set aside a verdict in order to prevent a miscarriage of justice when a decisive matter has not been raised at the trial. . . . It is not every variance from the strict letter of what the law may require, if invoked during the trial, which does injustice or which warrants a new trial." See *Commonwealth* v. *Meserve*, 154 Mass. 64, 75. A careful examination of the entire record discloses no reason for the exercise of our power to set aside the verdict.

*Judgment on the verdicts.*