Sosman, J.
Plaintiff Rosa DiFlorio and her co-trustees have brought the present action seeking to void a mortgage and lease transaction that they entered into with defendant Angelo DiPierro. They further claim that DiPierro’s actions to enforce the lease and mortgage violated G.L.c. 93A. DiPierro has counterclaimed seeking a declaration of his rights under the lease and mortgage, specific performance, and damages for alleged fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of G.L.c. 93A. Defendant has moved for summary judgment in his favor on all claims against him and on his counterclaims. For the following reasons, defendant’s motion is ALLOWED as to all claims against him and as to his counterclaims for declaratory relief, injunctive relief, and breach of contract.
Facts
Plaintiff Rosa DiFlorio was the owner of a commercial building in Everett. In June 1997, the property was sold at foreclosure. By prior arrangement, a friend of DiFlorio’s, one Donna Tuplin, made the highest bid. DiFlorio then arranged funding for Tuplln’s purchase by way of a loan from defendant Angelo DiPierro.[1]
In the ensuing transaction, the property was placed in the name of the Rosebud Realty Trust, a trust set up by DiFlorio for the benefit of her children. Tuplin was named Trustee, with the understanding that Tuplin would resign a short time thereafter and be replaced by DiFlorio herself. The Trust provided that the Trustee could borrow funds and mortgage or lease the Trust property “as may be directed by all of the beneficiaries.” With regard to third parties dealing with the Trust, the Trust provided that “(e)very instrument executed by any person who according to the records in the place of recording appears to be a Trustee shall be conclusive evidence in favor of every person relying or claiming under such instrument that at the time of the delivery of such instrument this trust was in full force and effect and that the Trustees were duly directed by the beneficiaries to execute and deliver the instrument.”
At closing, defendant DiPierro loaned $287,000 to the Trust, taking back a promissory note and mortgage from the Trust and a fifteen-year lease of some office space in the premises. The note, mortgage and lease were all signed by Tuplin as Trustee. DiFlorio was also present at the closing and was aware of the terms of the transaction and the documents that Tuplin was signing.
The note called for monthly payments over a period of fifteen years and specified (¶4) that “Borrower shall not have the right to make partial prepayment or full prepayment without the prior written consent of the Note Holder." In the event of default, Tuplin agreed (¶6(0)) that “the Note Holder may require me to pay the full amount of principal which has not been paid and all the interest that I owe on that amount” within thirty days, and that if that amount was not paid within thirty days, DiPierro “shall have the right to request a deed from Borrower in lieu of foreclosing upon its mortgage.” During the negotiations, DiFlorio *702 had repeatedly told DiPierro that if she were unable to make payments as promised, she would hand the property over to him and that there would “never” be any foreclosure.[2]
The mortgage gave the lender the right to invoke the statutory power of sale “and any other remedies permitted by applicable law.” A Rider to the mortgage also contained an unconditional assignment of rents to DiPierro, but allowed Tuplin to continue to collect rents unless and until she received a notice of default and DiPierro notified tenants that rents were to be paid to him.[3]
The parties also executed a “Standard Form Commercial Lease” granting DiPierro a fifteen-year lease to a particular unit at the premises. The rent was set at $1.00 per year. The term was stated unequivocally: “The term of this lease shall be for fifteen (15) years commencing on August 1, 1997 and ending on July 31, 2012.” The lease contained an acknowledgment that there was adequate and sufficient mutual consideration, and the signature line indicated that the parties “have hereunto set their hands and common seals.” Although the lease was executed at the same time as the note and mortgage, the lease makes no reference to the note or mortgage, and the note and mortgage contain no reference to the lease.
As anticipated, Tuplin resigned as Trustee by the end of 1997 and DiFlorio became Trustee of the Rosebud Realty Trust. Starting in May 1998, DiFlorio failed to make her monthly mortgage payments to DiPierro. On July 31, 1998, DiPierro, with advice of counsel, sent DiFlorio the following demand:
Please be advised that in accordance with paragraph 6.c of said promissory noté you are hereby notified that you are in default and that full payment of the principal amount outstanding plus accrued interest thereon is hereby demanded. Please also be advised that the Lender does hereby reserve any and all rights against you with respect to any resulting deficiencies or any monies fraudulently conveyed.
On the same date, DiPierro distributed a written notice to tenants advising them that they were to send all rent payments to DiPierro’s lawyer.
In response to the July 31 demand, DiFlorio (through her counsel) requested a current payoff figure. As part of that discussion about a payoff figure, a difference of opinion emerged as to the status of the lease. DiFlorio took the position that the lease would be terminated once the note was paid in full. DiPierro took the position that the lease was to remain in effect for the full fifteen years, without regard to any payoff of the note.
On August 26, 1998, DiPierro’s attorney wrote to DiFlorio’s attorney setting forth the calculation of a total payoff figure of $289,919.20. To resolve the parties’ differences with respect to the lease, DiPierro made a demand of $20,000 to be bought out of the remaining fourteen years on the lease.[4] The letter went on to specify that the prepayment on the note and mortgage could be made with or without buying out the remaining term on the lease:
It is Mr. DiPierro’s contention that either monies should be paid to him in order to compensate him for his willingness to forego the benefits of the commercial lease or he should simply be allowed to occupy the premises according to the terms of said lease.
If your client would prefer not to pay the $20,000 in order to buy out the lease, Angelo will of course still accept payment in full on the mortgage and deal with the commercial lease agreement accordingly.
Please also remind your client that she had indeed agreed to no pre-payment of the promissory note.
The parties were unable to resolve their differences, and the present action was filed on September 4, 1998.
Discussion
I. G.L.c. 93A
Both sides claim that the other has committed unfair and deceptive practices in violation of G.L.c. 93A. Without regard to the specific wrongs that each side alleges, it is clear that G.L.c. 93A does not apply to this transaction.[5] The loan, note, mortgage and lease were agreed to between people who were personal acquaintances. There is no evidence to suggest that DiPierro was in the business of making loans or that his loan to DiFlorio was made as part of his business. G.L.c. 93A does not apply to this purely private transaction between personal friends that was not made in the ordinary course of any trade or business. See Lantner v. Carson, 374 Mass. 606 (1978).
II. Validity of Mortgage and Lease
DiFlorio contends that the lease and mortgage transactions with DiPierro should be declared void because the Trustee, Donna Tuplin, did not have the consent of the Trust beneficiaries at the time. The contention not only lacks legal merit but is patently disingenuous. The Trust expressly allows third parties to rely on instruments executed by the Trustee. The Trust provides that the Trustee’s execution “shall be conclusive evidence in favor of every person relying or claiming under such instrument that. . . the Trustees were duly directed by the beneficiaries to execute and deliver the instrument.” Such a provision in the Trust relieves DiPierro of any duty to inquire into the Trustee’s authority. See Penta v. Concord Auto Auction, Inc., 24 Mass.App.Ct. 635, 639-41, review denied, 400 Mass. 1107 (1987).
The transactions would only be unenforceable if DiPierro had actual knowledge of Tuplin’s lack of authority to enter into the lease, note and mortgage. Id. DiFlorio has no evidence of any such actual knowledge on DiPierro’s part, and the undisputed facts *703 would all support DiPierro’s belief that the transaction was authorized.
The beneficiaries were DiFlorio’s children, and, to the extent that DiPierro knew anything about the identity of the beneficiaries, DiPierro would therefore reasonably believe that DiFlorio herself had the power to authorize the Trustee’s actions on behalf of her children.[6] On the undisputed facts, not only did DiF-lorio authorize the transactions, but she was the architect of the entire deal. DiFlorio negotiated the terms of DiPierro’s loan (including the mortgage and lease), set up the closing, attended the closing, and directed Tuplin throughout.[7] Indeed, it is undisputed that the entire arrangement with Tuplin was a straw transaction. Having set up a sham transaction for her own purposes, there is considerable irony in DiFlorio’s assertion that her own straw Trustee lacked authority to do the very deal that DiFlorio had arranged. DiFlorio obviously approved of this transaction on behalf of her children, and DiPierro was aware of DiFlorio’s approval. To invalidate the lease and mortgage, DiFlorio would have to prove that DiPierro had actual knowledge of a lack of authority. She has no such evidence, the undisputed evidence all suggests the contrary, and DiPierro is therefore entitled to summary judgment with respect to the enforceability of both the lease and the mortgage.[8]
II. Lease Term
DiFlorio contends that the lease to DiPierro was to terminate when the note itself was paid off and that DiPierro’s wrongful insistence that the lease remains in effect has frustrated her efforts to refinance the building. In his counterclaim, DiPierro seeks a declaration that the lease would remain in effect, notwithstanding any prepayment of the note.
The lease itself sets forth an unambiguous fifteen year term, from August 1, 1997 to July 31, 2012. Other than the tenant’s default (which has not occurred), the lease sets forth no contingency for which the lease would terminate at any earlier date. The note and mortgage make no reference to the lease whatsoever, and do not in any way provide that their discharge would terminate any lease to DiPierro. The clear and unambiguous wording of the documents that evidence this transaction thus gives DiPierro his fifteen year lease, whether the note and mortgage are paid off or not.
DiFlorio contends that because the note, mortgage and lease were executed as part of the same transaction and were set to run for fifteen years, they must all terminate together if any one of them is terminated prior to the expiration of that fifteen years. Nothing in the circumstances surrounding the transaction supports such a conclusion, nor would the circumstances overcome the unambiguous wording of the contract documents. The parol evidence rule bars DiFlorio from introducing evidence of prior negotiations that would be contrary to that unambiguous wording. “[A] written agreement unambiguous in its terms, in the absence of fraud or mistake, is conclusively presumed to express the whole intent of the parties, and cannot be affected by extrinsic evidence.” Nelson v. Hamlin, 258 Mass. 331, 340 (1926). See also Community Builders, Inc. v. Indian Motorcycle Associates, Inc., 44 Mass.App.Ct. 537, 552 (1998) (“parol evidence rule bars reliance on preliminary negotiations to undermine unambiguous language in a final, integrated agreement”).[9]
Even if, as DiFlorio contends, the lease was to terminate automatically on any payoff of the note, DiPierro’s consent to prepayment was given only on condition that his lease remain in effect. Reading the documents together, DiPierro has the right to prevent any early payoff on the note and thus, even under DiFlorio’s interpretation, the right to prevent any early termination of the lease. DiFlorio can not prepay the note without DiPierro’s consent, and thus the note itself can not be prepaid except on such terms as are acceptable to DiPierro. Where his consent to prepayment has only been given on condition that he retain his lease, DiFlorio has no right to insist that the lease be terminated upon prepayment. If (as she contends) she can not prepay the note without obtaining a release of the lease, her sole remaining option under the contract is to pay the note according to its schedule.
Accordingly, the unambiguous fifteen year lease term is unaffected by any prepayment or discharge of the note and mortgage, and DiPierro committed no wrong in insisting that his lease remain in effect following payment of the note.
III. Prepayment of the Note
By its express terms, the note did not allow for prepayment absent DiPierro’s prior written consent. By his written demand for payment of the entire outstanding balance, followed by a further letter expressing DiPierro’s willingness to accept prepayment, DiPierro communicated his written assent to prepayment in full back in August 1998.[10] However, DiFlorio did not proceed to make the prepayment and has contended that she can not do so unless DiPierro relinquishes the lease. Rather than make prepayment, DiFlorio filed this lawsuit and has, for the duration of the suit, ceased making her monthly payments as well. The question, therefore, is whether DiPierro now has the right to retract his earlier written consent to prepayment.
The two written consents to prepayment did not set any specific time frame for DiFlorio’s prepayment. That does not require DiPierro to keep his offer to accept prepayment open in perpetuity. In the absence of a specified time, the law implies that the offer to accept prepayment remained open for a “reasonable” time. For over a year, DiFlorio has not communicated any verbal acceptance of DiPierro’s offer, nor has she accepted his offer by tendering any prepayment. In *704 stead, she has told DiPierro that she is incapable of meeting his terms for prepayment because she says she can not complete the necessary refinancing unless he relinquishes the remainder of his lease. Meanwhile, DiFlorio’s default has worsened, as she has failed to make even her monthly payments during the pen-dency of this lawsuit, DiPierro’s willingness to accept prepayment a year ago when DiFlorio was in default by only a few months does not commit him to accept prepayment now that she has remained in default for another twelve months and sued him.
As a matter of law, this court rules that DiFlorio did not accept DiPierro’s offer within a reasonable time and that DiPierro therefore had the right to withdraw that offer. Accordingly, DiPierro is entitled to enforce his rights under the original contract, and he may, at his option, elect to accept prepayment or insist on receiving monthly payments at the stated interest rate for the remaining years of the loan term.[11]
IV.Deed in Lieu of Foreclosure
DiPierro contends that the provision in the note giving him the “right to request a deed from Borrower in lieu of foreclosing upon [his] mortgage” now entitles him to a deed without going through foreclosure proceedings. As drafted, the note gives him only a “right to request” a deed in lieu of foreclosure. It does not expressly state that DiFlorio must honor that “request.”
However, read in that technical manner, the reference to a right to “request” a deed in lieu would be an utterly superfluous provision in the parties’ contract. A lender may always “request” that a borrower turn over a deed and forego the formalities of foreclosure, and a provision in the note giving DiPierro the “right” to make such a “request” is unnecessary. In context, although inartfully and ambiguously drafted, the provision strongly suggests that the parties did intend that DiPierro would be entitled to a deed in lieu of foreclosure in the event of default.
Where the written version of the contract is ambiguous, reference to parol evidence is allowed. See Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997), and cases cited therein. Here, the parties do not dispute that, both during the negotiations and again at closing, DiFlorio repeatedly promised DiPierro that he would not have to go to the expense and delay of any foreclosure proceeding and that, if she could not keep up with her payments, she would just “hand him the keys.” Thus, in accord with the undisputed parol evidence, the note provision giving DiPierro the “right to request” a deed in lieu of foreclosure will be interpreted to mean that, in the event of default and upon DiPierro’s request, DiFlorio is required to give DiPierro a deed in lieu of foreclosure.
There is no dispute that DiFlorio is now in default, and DiPierro has demanded that deed in lieu of foreclosure. He is entitled to an order of specific performance giving him a deed to the property, with DiFlorio’s obligation on the note being reduced by an amount representing the current fair market value of the property.
V. Demanding Rent from Tenants
DiFlorio also contends that DiPierro wrongfully demanded rent from tenants and asserted ownership over the premises. The contract documents make clear that, in the event of default, DiPierro was entitled to effectuate the assignment of rents by sending the Trustee a notice of default and notifying tenants to send their rents to him. The notice of default to DiFlorio and the notices to tenants were sent on the same day. There was nothing wrongful in DiPierro’s exercising his right to the rents once he had provided DiFlorio with the required notice of default.
With regard to DiPierro’s alleged assertion of control over the premises, there would be nothing wrongful about such an assertion of control. As discussed above, the parties’ intent was that, in the event of default, DiFlorio would “hand over the keys” to DiP-ierro. Once DiFlorio was in default, DiPierro’s claim to possession of the premises was consistent with that agreement. DiFlorio’s own wrongful withholding of the agreed deed in lieu of foreclosure does not make it wrongful for DiPierro to have asserted dominion over the property consistent with the parties’ agreement.
VI. Fraud and Misrepresentation
DiPierro’s counterclaim also alleges that DiFlorio made misrepresentations to him by way of the Trustee’s Certificate. His motion for summary judgment merely claims that such a certificate was signed and delivered at closing. That Tuplin now disputes the genuineness of her signature on that document does not, by itself, prove any fraud on DiFIorio's part. DiPierro is not entitled to summary judgment on his claim for fraud. In light of the court’s ruling in DiPierro’s favor on the issue of the validity of the lease, note and mortgage (notwithstanding any lack of authorization by the beneficiaries), it appears that the claim of fraud with respect to the Trustee’s Certificate is unnecessary and redundant. The court will enter judgment in favor of the Trustees on DiPierro’s counterclaim for fraud and misrepresentation.
VII.Breach of the Implied Covenant of Good Faith and Fair Dealing
DiPierro’s counterclaim also includes a claim for breach of the implied covenant of good faith and fair dealing. However, the only allegation made in this count is that DiFlorio failed to perform the express obligations of the contract. He has not alleged any separate and distinct breach of any implied covenant, and DiPierro has already prevailed on his claim for breach of the express provisions of the contract. Accordingly, judgment will enter in favor of the Trustees on DiPierro’s counterclaim for breach of the implied covenant of good faith and fair dealing.
*705 ORDER
For the foregoing reasons, defendant’s Motion for Summary Judgment is ALLOWED and it is hereby ORDERED that judgment be entered as follows:
1) On all of the claims set forth in plaintiffs’ complaint, judgment to be entered for defendant Angelo DiPierro;
2) On Count I of defendant’s counterclaim, judgment tobe entered in favor of Angelo DiPierro declaring (a) that his lease is in effect for its stated fifteen-year term notwithstanding any earlier payoff of the promissory note, (b) that Angelo DiPierro is entitled to a deed in lieu of foreclosure, (c) that the Trustees of Rosebud Realty Trust are in default of the promissory note, and (d) that the Trustees of Rosebud Realty Trust may not prepay the promissory note without Angelo DiPierro’s consent;
3) On Count II of defendant’s counterclaim, judgment to be entered in favor of Angelo DiPierro ordering the Trustees of Rosebud Realty Trust to convey to him a deed in lieu of foreclosure;
4) On Count III of defendant’s counterclaim, judgment to be entered in favor of Angelo DiPierro in an amount to be established by way of motion and hearing for assessment of damages, said motion to be submitted by Angelo DiPierro within 45 days of receipt of this Order;
5) On Counts IV, V and VI of defendant’s counterclaim, judgment to be entered in favor of d'efendants-in-counterclaim Trustees of Rosebud Realty Trust.

 At oral argument, both sides agreed that DiFlorio and DiPierro had been personal acquaintances and that DiPierro had approached DiFlorio with an offer of assistance when he learned of the impending foreclosure sale.

 DiFlorio testified at her deposition that this understanding was articulated at the closing:
Q: And do you remember having any discussions with him about signing over the property in the event that he didn’t get these payments on time?
A: I told him that I would never let him foreclose. If I had any problems that I couldn’t take care of, that I couldn’t go on with the property, I couldn’t make it, I would hand him the keys.
Q: And anything else that you can remember talking about what would happen in the event you couldn’t make your payments?
A: I told him no matter what, he would always get his money, whatever he put out. In other words, I would never deny him the money or go through any foreclosure, let him go through an attorney for expenses. I told him I would make sure he had his money, and that is just what I am doing.
Q: Okay. Did he ever tell you that he wanted to be sure this wasn’t a short-term loan and that in the event you were going to finance quickly with someone else, he didn’t want to loan you these monies?
A: No. He just said what happens, you know, I don’t want to foreclose. In other words, he didn’t want to go through the expense, that is what I remember, and I promised him I would never have to do [sic] that.
A: In other words, if I had a problem paying him every month, then I would just turn over the keys to him.
A: And I promised Angelo DiPierro at the time of closing I would never let him foreclose. If I felt that I couldn’t go on with the building, I would give him the keys.

 DiPierro claims that a Trustee's Certificate, confirming that the beneficiaries had consented to the mortgage, was also signed by Tuplin and notarized by DiPierro’s lawyer at the closing. However, Tuplin claims the signature on that document is not hers, and DiFlorio claims the signature is not hers either. For purposes of the present motion, the court therefore assumes that neither Tuplin nor DiFlorio executed any Trustee's Certificate.

 To justify that figure, DiPierro’s attorney contended that the fair market value of the leased space was $6,000 per year and the fifteen year lease was therefore worth approximately $90,000.

 For the reasons discussed below, there is no evidence of any wrongdoing on DiPierro’s part that would give rise to liability under G.L.c. 93A in any event. As to DiFlorio, the only evidence of any wrongdoing on her part is her failure to keep current on her mortgage (due to inability to pay) and her failure to turn over a deed. There is no evidence of anything beyond a straightforward breach of contract, which would be insufficient to make out a claim of unfair or deceptive practices on her part.

 It is unclear whether any schedule of beneficiaries was even prepared by the time of closing. DiFlorio testified that it was not until several months later, when Tuplin resigned as Trustee, that DiFlorio told her lawyer that “I wanted all my children to have even parts in the trust." She did not recall seeing any schedule of beneficiaries prior to that time.

 A few months later, when Tuplin “resigned" and DiFlorio herself officially took over as Trustee, DiFlorio did nothing to repudiate the mortgage and lease.

 DiFlorio’s alternative argument, that the lease is unenforceable for lack of consideration, is frivolous. DiPierro loaned $287,000 to DiFlorio in this transaction, in exchange for the note, the mortgage and the lease. The lease itself set annual rent at $ 1.00 and recited the parties' acknowledgment that there was adequate and sufficient consideration. DiFlorio protests that the consideration is out of proportion in light of the alleged $90,000 fair rental value of the premises. Imbalance in the value of the parties' promised exchange (if there was any in this case) does not amount to insufficient consideration. Moreover, the lease recited that it was signed under seal, rendering the lease a sealed instrument for which no consideration need be shown. See Johnson v. Norton Housing Authority, 375 Mass. 192, 194-95 (1978).

 Application of the parol evidence rule works no injustice in the present case, as DiFlorio can not recall any specific conversation on this point that would be at odds with the written terms. Rather, as set forth in her deposition, she simply relies on her own “understanding” that the lease would terminate if the note were prepaid and then reasons that there must have been some discussion with either DiPierro or his lawyer that gave rise to that “understanding.” Where DiFlorio can not recall any particular statement or representation on this subject during the negotiations, DiFlorio also can not avoid the terms of the written contract by claiming fraud or misrepresentation. Her complaint does not contain any count alleging fraud or misrepresentation, she would be unable to set forth such a claim with the required particularity, and the time for amending her complaint has expired.

 That consent was not contingent on any buyout of the remainder of the lease, as DiPierro offered DiFlorio the option of paying off the note and leaving the lease in place or paying off the note plus $20,000 to buy out the remainder of the lease as well.

 Where DiPierro has withdrawn his earlier consent to prepayment, his current claim for money damages will be limited to the amounts owed to date on the monthly payment schedule, plus any applicable charges and fees provided in the note. Based on DiFlorio’s default, DiPierro may again demand payment of the entire outstanding balance, but such a renewed demand would constitute a renewed consent to prepayment.